**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-20405**
_____


**EUGENE L. BARRINGTON,**

**Plaintiff-Appellee,**

**versus**

**TEXAS SOUTHERN UNIVERSITY, ET AL.,**

**Defendants,**

**GEORGE YORKE,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(95-CV-4574)**
_____
**July 22, 1998**

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:[1]

For this interlocutory appeal concerning qualified immunity, the linchpin is whether the following alleges the violation of a clearly established constitutional right, the first prong of the bifurcated test for qualified immunity: that a violation of an asserted due process property interest in promotion to the position of associate professor at a college occurs if, after the college board approves such a promotion for an assistant professor, the

---

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

dean of that professor's department intentionally misinforms him, because of personal animus, that the promotion has instead been denied, when the college board, not the dean, is the decision-maker and the dean's role is merely to relay the board's decision to the assistant professor.

The district court denied summary judgment for George Yorke on qualified immunity grounds, Yorke having allegedly intentionally misinformed Eugene Barrington, because of personal animus, about his promotion to associate professor. In so doing, the district court held, by implication, that the alleged intentional misinformation about the promotion could be a violation of a clearly established constitutional right — specifically, the denial of Barrington's due process property interest in the promotion to the position of associate professor. Because Barrington failed to make the requisite allegation of the violation of a clearly established constitutional right, Yorke is entitled to qualified immunity. Therefore, concerning the due process property interest claim against Yorke, we **REVERSE** and **RENDER**.

I.

The factual background is viewed, of course, in the light most favorable to Barrington. *E.g., **Abbott v. Equity Group, Inc.***, 2 F.3d 613, 618-19 (5th Cir. 1993). In 1977, he was hired by Texas Southern University (TSU) as an assistant professor in its School of Public Affairs, and was awarded tenure in 1984. Later that same year, the School of Public Affairs became the Department of Public

2

Affairs, part of the School of Management.  During the 1984-85 academic year, Yorke was serving as Dean of that School.

By letter of 28 February 1985, the Rank, Tenure, Salary, and Promotion Committee of the Department of Public Affairs advised Yorke that it recommended Barrington for promotion to associate professor.  Yorke opposed the recommendation but, pursuant to TSU rules, forwarded it to the TSU Board of Regents (the Board).

On 18 April 1985, Barrington was advised by a letter from Yorke that, "[o]n recommendation of the Administration, the [Board], at its April 12, 1985 meeting, did not approve [Barrington's] application for promotion to the rank of Associate Professor".  The letter also suggested that Yorke would meet with Barrington on 9 May 1985 "to discuss the reasons why the Administration did not recommend [his] application".

But, Barrington never followed up on the suggested meeting with Yorke; Barrington now maintains that the meeting "was not possible nor relevant".  Barrington points to Yorke's deposition testimony, which indicates that Yorke may have been hospitalized at some point during the Spring of 1985.  Also, around this same time period, the Department of Public Affairs was moved from the School of Management to the School of Arts and Sciences; therefore, Yorke no longer served as Dean of Barrington's department.

More than eight years later, in October 1993, another TSU professor advised Barrington that the minutes of the April 1985 Board meeting reflect that Barrington's promotion to associate professor had been approved.

3

Barrington filed this action in September 1995. He presented claims against the TSU Board and ten individuals in their official capacity, including the TSU President and Chairman of the TSU Board, for prospective injunctive relief. Barrington sued Yorke in his individual capacity, seeking injunctive relief and damages. Barrington claimed: (1) that, violative of due process, all defendants deprived him of a property and liberty interest; (2) that all defendants violated his equal protection rights; and (3) that, in addition, Yorke was liable under Texas law for intentional infliction of emotional distress and mental anguish.

The defendants moved under Rule 12(b)(6) to dismiss. The district court granted the motion in part, dismissing the due process deprivation-of-liberty claim and the equal protection claim. The court also dismissed two of the official capacity defendants. But, the court denied Yorke's qualified immunity claim.

In the defendants' subsequent motion for summary judgment, Yorke again asserted qualified immunity. In his supporting affidavit, he stated that his denial-of-promotion letter to Barrington was the result of a hand-written notation Yorke received in April 1985 from the TSU Vice-President of Academic Affairs, Llayron Clarkson, indicating that the Board, during the April meeting, had decided not to approve Barrington's promotion. This chain of events was in accordance with the TSU policy for communications regarding promotions, which required that the Board notify Clarkson, who then was to notify Yorke, who, in turn, was to

4

inform the applicant. Clarkson's affidavit supported Yorke's assertions. (Clarkson's affidavit states also that the designation in the minutes that Barrington was promoted is the result of a typographical error. Yorke, however, does not raise this contention on appeal.)

As part of his opposition to summary judgment, Barrington presented a certified copy of the minutes, showing that he was promoted to associate professor. And, Barrington submitted the affidavit of Winston Webster, a Board member on 12 April 1985, stating that, "[b]y an unanimous vote, the TSU Board promoted Eugene Barrington to the rank of Associate Professor on 4/12/85. Such promotion is binding as TSU Board policy". Barrington also moved for summary judgment on liability.

The district court denied summary judgment for Barrington. As for Yorke, the court granted him summary judgment against the intentional infliction of emotional distress claim, but denied him summary judgment on the remaining due process (property interest) claim, concluding that he was not entitled to qualified immunity.

## II.

Yorke filed this interlocutory appeal from the denial of qualified immunity as to the due process claim. The sole issue presented is whether he is entitled to that immunity.

## A.

The denial of summary judgment as to a qualified immunity claim is immediately appealable, even if certain fact issues exist, when the ruling determines a question of law. *E.g., **Wren v. Towe**,*

5

130 F.3d 1154, 1157 (5th Cir. 1997) ("A district court's denial of summary judgment is not immune from interlocutory appeal simply because the denial rested on the fact that a dispute over material issues of fact exists.") (citation omitted); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (discussing *Behrens v. Pelletier*, 516 U.S. 299 (1996)). In order to entertain jurisdiction in this case, we must "take, as given, the facts that the District Court assumed when it denied summary judgment". *Coleman*, 113 F.3d at 531 (internal quotation omitted).

Accordingly, we have jurisdiction to determine the following question of law: whether, assuming as correct the facts relied upon by the district court, Yorke is entitled to qualified immunity against Barrington's due process property interest claim.

B.

Of course, we review a summary judgment *de novo*, viewing the evidence in the light most favorable to Barrington. *Abbott*, 2 F.3d at 618-19. In so doing, we focus on "'whether there is any [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed'". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. In this regard, for the denial of

> summary judgment based on qualified immunity, we review the evidence in the light most

6

> favorable to the nonmovant, but the plaintiff
> has the burden to come forward with summary
> judgment evidence sufficient to create a
> genuine fact issue as to whether the
> defendant's conduct was objectively reasonable
> in light of clearly established law.

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

Along this line, the bifurcated test for Yorke's qualified immunity defense to Barrington's due process claim is more than well-established: (1) whether, *under currently applicable constitutional standards*, Barrington alleged the violation of a clearly established constitutional right; and (2) if so, whether, *under the clearly established law at the time of the incident*, Yorke's conduct was objectively unreasonable. *E.g.*, *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998); *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993).

Barrington's claim under 42 U.S.C. § 1983 is for violation of the Due Process Clause of the Fourteenth Amendment and the Fifth Amendment. His first amended complaint states this claim, in pertinent part, as follows:

> The acts and omissions of Yorke violated Barrington's constitutional right of due process.... The arbitrary and capricious outrageous actions by Yorke are shocking to the conscience....
>
> ....
>
> Barrington will never be able to regain the ten years lost because of Yorke's intentional wrongful act denying Barrington's promotion.

In his second amended complaint, Barrington expanded on his allegedly violated property interest:

7

> By virtue of tenure granted to Barrington by TSU in May 1984, Barrington had a property interest in his job. In intentional violation of the Fifth and Fourteenth Amendments to the Constitution ..., Yorke acted arbitrarily and capriciously under color of law and proximately deprived Barrington of his constitutional right of procedural and substantive due process.... Yorke's wanton acts were oppressively done with malice.

And, in his summary judgment motion, Barrington claimed in part:

> Yorke intentionally, wrongfully and outrageously advised Barrington on April 18, 1985, that the promotion was denied. ... Yorke acted out of the long existing animus stemming from Barrington's insistence on following the wishes of Barrington's colleagues and refusing in 1984 to decline to serve as Department Chair as Yorke wanted.

Yorke's motion for summary judgment on qualified immunity grounds asserted that Barrington's allegations did not constitute a violation of a clearly established constitutional right. In denying the motion, the district court stated:

> Defendants assert that [Barrington] fails to establish the violation of any clearly established constitutional right. The Court previously denied Defendants' dismissal motion on this issue, noting that [Barrington] was entitled to pursue a claim for deprivation of his due process rights, *assuming that [Barrington] could establish a property interest in his alleged right to an associate professor position in April of 1985*.
>
> Upon review of the evidence submitted, the Court finds that a genuine issue exists as to *whether [Barrington] had a property right to an associate professor position as a result of the TSU Board meeting of April 12, 1985*.

(Citation to record omitted; emphasis added.)

8

Thus, the district court held implicitly that a promotion to associate professor is a clearly established constitutional right, presumably as a property interest under the Due Process Clause; but, that a fact issue remains whether Barrington possessed such a right and whether that right was violated. The district court did not cite any authority in assuming or holding, by implication, that the alleged intentional misinformation by Yorke regarding the promotion could constitute the violation of a clearly established constitutional right.

But, our court has cautioned against such an approach for ruling on qualified immunity claims.

> It is a common failing in qualified immunity decisions that courts avoid deciding exactly what constitutional violation might have occurred if the facts are as a plaintiff alleged. We have previously required a plaintiff to allege the facts underlying his claimed violation of constitutional rights with sufficient specificity to demonstrate that defendants' qualified immunity should be revoked. ... [T]he court must be able to characterize the plaintiff's claim precisely as a matter of constitutional law before ruling upon an immunity defense. It is not enough that the court concludes that a violation *arguably* occurred. Rather, the court must be certain that if the facts alleged by plaintiff are true, notwithstanding any credibility disputes with defendants, *then* a violation has clearly occurred. The purpose of requiring careful characterization of plaintiff's claim at the outset of a qualified immunity analysis is to effectuate the goal of that defense, which is immunity from suit, not just from trial.

*Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir. 1989) (citation omitted) (emphasis in original); *Hare*, 135 F.3d at 325-26.

9

The holding in *Connelly*, grounded in Supreme Court precedent such as *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987), was reemphasized by the Supreme Court in *Siegert*, 500 U.S. at 231, which held it improper to assume, without deciding, the preliminary issue of whether the plaintiff alleged the violation of a clearly established constitutional right.

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted *is the determination of whether the plaintiff has asserted a violation of a constitutional right at all*. Decision of *this purely legal question* permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

*Id.* at 232 (emphasis added).

Accordingly, the first prong of our qualified immunity test — whether Barrington alleged the violation of a clearly established constitutional right — should be determined as a question of law. *See also* **Mitchell v. Forsyth**, 472 U.S. 511, 526 (1985); **White v. Taylor**, 959 F.2d 539, 544 (5th Cir. 1992). Barrington's due process allegation raises two questions relevant to our analysis under this first prong: (1) whether he alleged the possession of a clearly established property right; and (2) if so, whether he alleged that Yorke violated that right.

10

1.

First, Barrington contends that the district court found a genuine issue of material fact as to whether he established a property interest in his promotion to associate professor, and that, therefore, we do not have jurisdiction to review it in this interlocutory appeal. *See Baulch v. Johns*, 70 F.3d 813, 815 (5th Cir. 1995). On the other hand, as we stated in *Connelly*, in which the district court likewise found that the plaintiff "arguably" had a constitutionally protected property interest,

> with respect to the immunity defense, the court seems to have assumed that the existence of an "arguable" right to property ... triggered due process protections.... Due process analysis requires first a finding of a property or liberty interest and then an assessment of what process must attend a particular deprivation. We must disagree with the court's implicit assumption that the existence of an "arguable" property or liberty interest may thwart an immunity defense.

876 F.2d at 1212.

But, we do not reach this property-right issue because, as noted by Barrington, Yorke does not specifically contest on appeal that Barrington has a property interest in his promotion by TSU to associate professor. Yorke's failure to do so is somewhat perplexing, given that he raised it in district court and that the district court, in denying his motion for Rule 12(b)(6) dismissal, invited him "to urge this issue on summary judgment", at which time Barrington "will have the burden of establishing a genuine issue of material fact as to the existence of a property interest".

11

In any event, Yorke's assertion on appeal that Barrington failed to allege that Yorke violated *any* federal right, discussed *infra*, could be viewed to contest Barrington's property interest in the promotion.    But, it is incumbent upon the appellant to explicitly state the issues on appeal.    *See* FED. R. APP. P. 28(a)(6).    Because Yorke has not adequately raised the issue of whether there is a clearly established property right in the promotion, we will not address it.    *See* **Hileman v. City of Dallas**, 115 F.3d 352, 355 (5th Cir. 1997) (citing **Cavallini v. State Farm Mut. Auto Ins. Co.**, 44 F.3d 256, 260 n.9 (5th Cir. 1995)).

2.

The other subpart for the first prong of the qualified immunity test is whether Barrington alleged that Yorke *violated* this putative clearly established constitutional right.    Yorke sufficiently raises this issue on appeal, contending that Barrington failed to allege that Yorke *violated any* constitutional right.    Yorke contends that Barrington alleged only that Yorke falsely informed Barrington that his promotion was denied; which, Yorke maintains, is not a violation of a constitutional right.

"Property interests, of course, are not created by the Constitution.    Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law...."  *See* **Board of Regents of State Colleges v. Roth**, 408 U.S. 564, 576 (1972).  The Court has found due process property interests violated when, without a fair hearing, public college professors are dismissed from contractual

12

or tenured employment or even after only being promised continuing employment. *Connell v. Higginbotham*, 403 U.S. 207, 208 (1971); *Slochower v. Board of Higher Ed.*, 350 U.S. 551 (1956); *Wieman v. Updegraff*, 344 U.S. 183 (1952).

But, this appeal presents a situation different from these well-established violations of due process property interests. Barrington does *not* allege that Yorke somehow rescinded the promotion or made it invalid. In fact, quite the opposite is true: Barrington consistently urges that the promotion was valid, and that Yorke was completely without power or authority to rescind it.

Barrington cites little authority for the proposition that intentionally and falsely stating that a promotion was denied violates clearly established constitutional law. *Roth*, 408 U.S. at 576-78, which was cited by the district court in its denial of Yorke's motion to dismiss, held that a nontenured, state university professor, who was not rehired at the end of his contractual employment period, absent any university rules or policies, did not have a constitutionally-protected property interest in reemployment requiring a hearing on the decision not to rehire.

Barrington cites also *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970), in which our court held that a nontenured college instructor, whose employment contract was not renewed, was not entitled to a rehearing before the college board to present witnesses who would only enhance the board's decision to terminate his employment. Finally, Barrington cites *Perry v. Sindermann*, 408 U.S. 593 (1972), which held that a state junior college professor,

13

whose employment contract was not renewed, was entitled to procedural due process if he had tenure under the junior college's de facto tenure program.

Needless to say, the above cases concern the procedural due process involved when employment is terminated. Barrington does not explain their applicability, instead string-citing to **Forsyth v. City of Dallas**, 91 F.3d 769, 774 (5th Cir. 1996) (violation of property right when individuals transferred to less desirable job in retaliation for exercise of First Amendment rights); **Fyfe v. Curlee**, 902 F.2d 401, 404 (5th Cir.) (transfer of teacher to less desirable job in retaliation for placing her child in all-white school violated First and Fourteenth Amendments), *cert. denied*, 408 U.S. 940 (1990); **Bickel v. Burkhart**, 632 F.2d 1251 (5th Cir. 1980) (fireman must be made whole because denial of his promotion was in retaliation for exercise of protected speech); and **Click v. Copeland**, 970 F.2d 106 (5th Cir. 1992) (property interest violated when sheriff's deputy transferred to less desirable job in retaliation for conduct protected by First Amendment). Apparently, these cases are cited as analogous support for the proposition that misinforming an individual about a promotion, *because of personal animus*, is a violation of a clearly established due process property right in the position.

We are far from persuaded by this analogy. Obviously, there is a meaningful difference between the instant case and one in which a defendant affirmatively exercises vested authority to terminate a plaintiff's employment position, replacing it with a

14

less desirable position, in response to the plaintiff's constitutionally protected actions. Barrington has alleged only that Yorke, out of personal animus, misinformed him about his promotion, which had been approved by the Board. The sole act of writing a letter of misinformation about the promotion, *which also asked Barrington to meet with Yorke on 9 May 1985 "to discuss the reasons why the Administration did not recommend [his] application"*, had no effect on the promotion *qua* promotion to associate professor (the putative clearly established property interest). Moreover, despite the invitation to meet with Yorke, Barrington never inquired into the notice of his promotion-denial.

Accordingly, we find no support for Barrington's allegation that Yorke *violated* the putative due process right to his property interest in a promotion to associate professor. Again, Yorke did not, and indeed could not, rescind this putative property interest; merely sending a letter that misinformed Barrington, out of personal animus, about the status of the promotion did not rescind, and hence did not violate, any property interest. *See **Siegert***, 500 U.S. at 232-35 (holding that, although plaintiff's allegation "may be recoverable under State tort law", it does not constitute the violation of a constitutional right); ***Paul v. Davis***, 424 U.S. 693, 712 (1976) (finding no due process violation and noting that "the State may protect against [plaintiff's alleged] injury by virtue of its tort law....").[2]

---

[2] Along this line, Barrington had the opportunity to state his claims in district court. His tort-claim against Yorke for intentional infliction of emotional distress was dismissed on the

In short, because Barrington has not alleged the violation by Yorke of a clearly established constitutional right, our qualified immunity analysis need proceed no further. *E.g., **Baker v. Putnal***, 75 F.3d 190, 198 (5th Cir. 1996); *see also **Connelly***, 876 F.2d at 1212 ("A conclusion that the facts alleged by [plaintiff] could not establish a violation of law or constitutional right will also require judgment in the defendant['s] favor.").

### III.

With respect to Yorke's qualified immunity defense, and for the foregoing reasons, we **REVERSE** the denial of summary judgment against Barrington's due process property interest claim, and **RENDER** judgment for Yorke on that claim. This case is **REMANDED** for further proceedings consistent with this opinion.

*REVERSED and RENDERED and REMANDED*

---

merits by the district court by summary judgment. Of course, that decision is not a subject for this qualified immunity, interlocutory appeal.

*DENNIS, Circuit Judge, specially concurring:*

*I do not believe that this case presents any dispute as to a material issue of fact. On the summary judgment evidence presented, a reasonable trier of fact must conclude that the TSU Board either did not grant Barrington an associate professorship at all or that it tentatively voted to do so but either intentionally or negligently failed to implement its initial vote. Under each of these scenarios, no reasonable trier of fact could find that Barrington ever received a property interest in an associate professorship from the Board. Consequently, Barrington has not stated a claim that his constitutional right safeguarding his protected property interests was violated.*

BENAVIDES, Circuit Judge, specially concurring:

I concur in the result reached by Judges Barksdale and Dennis in their separate opinions. We have jurisdiction over this appeal and Yorke is entitled to qualified immunity. I write separately, however, to explain why I believe these conclusions are correct.

Yorke appeals from the district court's order denying his motion for summary judgment on the basis of qualified immunity. The district court found that a "genuine issue [of material fact] exists as to whether [Barrington] had a property right to an associate professor position as a result of the TSU Board meeting of April 12, 1985." Accordingly, we have jurisdiction to consider whether the existence of this property right is material to a determination of Yorke's entitlement to qualified immunity.

Whether Barrington has a property interest in his position as an associate professor as well as his increased salary is immaterial to a finding of qualified immunity in this case Insofar as Barrington's complaint states a claim for the violation of his substantive due process right to be free from the arbitrary deprivation of his employment-related property interests, Yorke is entitled to qualified immunity on this claim because this right was not clearly established on April 18, 1985. The Fifth Circuit did not recognize a substantive due process right to be free from arbitrary deprivations of state-employment-related property interests until 1987. *See Honore v. Douglas*, 833 F.2d 565, 568-69 (5th Cir. 1987). Further, the authority cited by the panel in *Honore* had not clearly established this right before April 18, 1985. Thus, the decisions of this circuit do not indicate that Yorke should have known that his conduct violated Barrington's substantive due process, as opposed to state-law, rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Barrington also contends that Yorke violated his rights to procedural due process. In the context of public higher education, procedural due process requires only that a professor not be deprived of a property interest without notice and an opportunity to respond. *Williams v. Texas Tech Univ.*, 6 F.3d 290, 293 (5th Cir. 1993); *Honore*, 833 F.2d at 568. Yorke's letter to Barrington met these requirements because it provided Barrington with notice of the deprivation by informing him

18

that he had been denied the desired promotion and provided him with an opportunity to respond by inviting Barrington to meet with Yorke on May 9th "to discuss the reasons why the Administration did not recommend his application." Barrington, however, chose not to avail himself of this opportunity for an informal hearing. Even if Yorke was not available at the appointed time, the *Mathews v. Eldridge* balancing test clearly indicates that Barrington should have sought a meeting with someone other than Yorke who could have also explained why he was denied the promotion.[3] Barrington, however, abandoned the process that was available to him. Thus, Yorke is entitled to qualified immunity on Barrington's procedural due process claims because he has not stated a claim for the violation of his constitutional rights.

For the foregoing reasons, I concur in the judgment.

---

[3] In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court stated that the determination of how much process a property interest deserves is based on a balancing of three factors: 1) the significance of the individual's property interest; 2) "the risk of an erroneous deprivation of such interest through the procedures used;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.