**REVISED**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 96-20326
_____

BARBARA COLEMAN,

Plaintiff-Appellee,

VERSUS

HOUSTON INDEPENDENT SCHOOL DISTRICT, et al.,

Defendants,

ANITA ELLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

May 19, 1997

Before REYNALDO G. GARZA, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Anita Ellis takes this interlocutory appeal from the denial of her partial motion for summary judgment, contending that she is entitled to qualified immunity from suit in her personal capacity. Concluding that plaintiff Barbara Coleman has failed to demonstrate that Ellis violated a clearly established constitu-

tional right, as required by *Siegert v. Gilley*, 500 U.S. 226 (1991), we reverse.

## I.

In 1994, Ellis was the principal at Ryan Middle School ("Ryan"), an institution within the defendant Houston Independent School District ("HISD"). When the position of assistant principal became available, Ellis informed Coleman, with whom she was previously acquainted, of the opening. Coleman, who is white, interviewed for the position and assured the committee that she could write and speak Spanish, which Ellis considered a prerequisite for the assistant principal in the bilingual environment at the school. Thereafter, Ellis recommended that Coleman be appointed assistant principal.

Ellis sent her recommendation to Andre Hornsby, district superintendent of HISD with supervisory authority over Ryan. By affidavit, Hornsby testified that soon after receiving the recommendation, he obtained information from another school district administrator discrediting Coleman's qualifications. Because this communication allegedly raised concerns that Coleman was not actually bilingual, as she had promised, Hornsby was reluctant to place Coleman permanently in the position of assistant principal. Therefore, at Hornsby's request, Ellis and Hornsby agreed to appoint Coleman to the position of "acting" assistant principal, thereby affording them an opportunity to evaluate her performance during the remainder of the 1994-95 academic year.

2

Coleman served as "acting" assistant principal at Ryan during the spring semester of that year. The parties hotly dispute whether her performance was satisfactory. By affidavit, Ellis testified that Coleman failed to demonstrate a functional fluency in Spanish during the course of the semester, with adverse consequences for relations between the administration and the student body. Coleman emphatically denied these charges, insisting that she had adequately demonstrated fluency in Spanish; allegations to the contrary, she claims, are merely a pretext for impermissible racial discrimination.

Regardless of her performance as "acting" assistant principal, Coleman admits that Ellis notified her in early June 1995 that she intended to recommend Coleman for the assistant principal position, and Ellis simultaneously requested that Coleman begin drafting the papers necessary for the permanent appointment. On June 14, 1995, however, Hornsby advised Coleman that she would not receive a permanent appointment as assistant principal at Ryan. Coleman alleges that Hornsby explained it was necessary for him to hire an Hispanic as the assistant principal; Hornsby vehemently denies the allegation, claiming that he merely advised Coleman that the new assistant principal must be bilingual, a qualification Coleman had not adequately demonstrated during her tenure as "acting" assistant principal.

Believing herself to be the victim of unlawful racial discrimination, Coleman filed suit against HISD, Ellis, Hornsby, and Parlee Crawford, naming the individual defendants in their

3

official and individual capacities.[1]  Coleman alleged that defen-
dants' actions constituted unlawful racial and national origin
discrimination in violation of the Equal Protection Clause and
42 U.S.C §§ 1981 and 1983 and conspiracy to discriminate against
her in violation of 42 U.S.C. § 1985.

The individual defendants pleaded the affirmative defense of
qualified immunity and, after limited discovery, filed a partial
motion for summary judgment on that basis.  The district court
granted summary judgment to Crawford and Hornsby concerning the
allegations of discrimination at Jones High School but denied
qualified immunity to Ellis and Hornsby concerning the allegations
of discrimination at Ryan.  Ellis alone appeals the denial of
qualified immunity.

## II.

Before reaching the merits, we must determine whether we have
appellate jurisdiction in this interlocutory appeal.  Coleman
claims that the order denying qualified immunity to Ellis was an
interlocutory order, based on the sufficiency of the evidence,
which is not appealable.  We disagree.

## A.

---

[1] The complaint alleged two independent acts of unlawful discrimination:
first, the denial of promotion to the position of permanent assistant principal
at Ryan, and second, the denial of appointment to the position of assistant
principal at Jones High School.  While the HISD and Hornsby were named as
responsible defendants in both incidents, Ellis was named only in the specific
allegations concerning Ryan, and Crawford was named only in the allegations
concerning Jones High School.

4

District court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, notwithstanding their interlocutory character, when based on a conclusion of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In contrast, such orders are not immediately appealable if they are based on sufficiency of the evidence. *See Johnson v. Jones*, 115 S. Ct. 2151, 2156 (1995). Therefore, orders denying qualified immunity are immediately appealable only if they are predicated on pure conclusions of law, and not if a "genuine issue of material fact" precludes summary judgment on the question of qualified immunity. We reject Coleman's assertion that the instant case falls in the latter category.

The Supreme Court has recently clarified this distinction in *Behrens v. Pelletier*, 116 S. Ct. 834 (1996), explaining that the existence of a genuine issue of material fact does not necessarily preclude immediate appeal of an order denying qualified immunity. Insofar as the district court order determines a question of law, the Court held, the denial of qualified immunity is appealable, notwithstanding the existence of a genuine issue of material fact. "*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of 'objective legal reasonableness.'" *Id*. at 842; *see also Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (articulating the test for qualified immunity); *accord Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir. 1996) (en banc).

Assumed facts are treated as undisputed facts in this analysis. In the aftermath of *Jones* and *Behrens*, we retain interlocutory jurisdiction to "take, as given, the facts that the district court assumed when it denied summary judgment," *Jones*, 115 S. Ct. at 2159, and to determine whether those facts are sufficient to state a claim under clearly established law, *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996); *Cantu v. Rocha*, 77 F.3d 795, 802-03 (5th Cir. 1996). "Denial of summary judgment on the ground of qualified immunity is immediately appealable to the extent that the question on appeal is whether the undisputed facts amount to a violation of clearly established law." *Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir. 1996).

Ellis does not challenge the sufficiency of the evidence underlying Coleman's allegations of discrimination. Instead, taking as given the facts assumed by the district court, Ellis claims that she is entitled to qualified immunity as a matter of law, because those assumed facts do not constitute a violation of clearly established federal law. Therefore, under the rule of *Jones* and *Behrens*, we may exercise appellate jurisdiction over this interlocutory appeal, for in doing so we do not decide the sufficiency of the evidence, nor do we decide disputed factual contentions.

B.

We must next identify what facts the district court assumed when it denied summary judgment. This is no easy task in the

instant case. Unfortunately, because the court neither entered a written order denying Ellis qualified immunity, nor specified its factual assumptions for the record, we must "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Jones*, 115 S. Ct. at 2159; *accord Behrens*, 116 S. Ct. at 842.

The grounds upon which the district court denied qualified immunity emerge from a close review of the record. Of paramount importance is the fact that the court did *not* deny summary judgment because a genuine issue of material fact existed concerning the allegations that Ellis intentionally discriminated against Coleman. To the contrary, the court assumed that Hornsby, "from all of the evidence, is the principal active administrator" in the contested employment decisions, whereas Ellis was merely the instrument of his will. As the district court explained:

> The evidence suggests, that is before me now and it is clearly not fully developed, that under pressure from her superiors, Ellis bent to his purpose. Whether she bent far enough to be ultimately liable, I have no idea at this stage. It seems clear that under circumstances which are understandably difficult for her, she was caught between an assistant principal and a deputy district superintendent. I believe that the case must continue against those two individuals.

> And Ms. Ellis, this just may be one more illustra-tion that no good deed goes unpunished. If you hadn't recommended her in the first place, you wouldn't be here. But unfortunately, I think you've gotten caught in the cross-fire. But jurisprudence is that you cannot accede to a superior's position if it turns out to be unlawful.

Consequently, the court denied qualified immunity to both Hornsby and Ellis, because a genuine issue of material fact existed as to

7

whether Hornsby had engaged in intentional discrimination.[2] "If she responded to an illegal order," the court opined, "the person who gives the order and the person who obeys it and takes the action, are both responsible and neither is protected by qualified immunity."[3]

On appeal, Ellis argues that the district court erroneously imputed Hornsby's alleged discriminatory intent to her, thereby denying her qualified immunity despite the court's assumption that Ellis did not intentionally discriminate against Coleman. Under these circumstances, Ellis claims, she was entitled to summary judgment on the basis of qualified immunity. We agree.[4]

III.

---

[2] Throughout the summary judgment hearing concerning qualified immunity, the court expressed its opinion that Hornsby, not Ellis, was the principal actor who had initiated the contested employment decisions. "The motivation may be in question," the district court said, "but the motivation, if it was, was Hornsby's motivation." Elsewhere, the court noted that "Hornsby apparently had an agenda different from Ellis' and acted on it."

[3] The court characterized Ellis as an "accessory after the fact" and suggested that her position was tantamount to the "Nuremberg defense." Indeed, the court expressly rejected allegations that Ellis had intentionally discriminated against Coleman, concluding that "frankly, Ellis's role seems to have been far more supportive than derogatory than [sic] Coleman's efforts. She gets caught between Hornsby and Coleman at some point."

[4] Given the interlocutory nature of this appeal, we express no opinion as to whether the district court *correctly* characterized Hornsby's and Ellis's relative responsibilities for the contested employment decisions. Indeed, because such a determination would require us to evaluate the sufficiency of the evidence underlying the claim, we would not have jurisdiction to engage in such an inquiry. *See Jones*, 115 S. Ct. at 2156; *Cantu*, 77 F.3d at 802-03. Instead, we merely recount the assumptions articulated by the district court, for the limited purpose of making the purely *legal* determination of whether the facts assumed amount to a violation of clearly established law. *See Nerren*, 86 F.3d at 472; *see also Behrens*, 116 S. Ct. at 842 (authorizing courts of appeals to determine the facts assumed by the district court for purposes of interlocutory appeal); *Jones*, 115 S. Ct. at 2159 (same). In other words, the question of whether the district court was correct in its assumptions awaits another day.

Qualified immunity shields government officials performing discretionary functions from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We review a claim of qualified immunity under a two-step process. First, we determine whether the plaintiff has alleged the violation of a "clearly established constitutional right" under currently applicable constitutional standards.  If so, we consider whether the defendant's conduct was nevertheless "objectively reasonable." *Nerren*, 86 F.3d at 473; *Kelly*, 77 F.3d at 821.

In *Siegert v. Gilley*, 500 U.S. 226, 231 (1991), the Court emphasized that the threshold inquiry in a qualified immunity case is whether the plaintiff has sufficiently alleged the violation of a clearly established constitutional right.  If not, summary judgment is appropriate, and the case should be dismissed.

Furthermore, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id*. at 232.  Because we conclude that Coleman failed to allege the violation of a constitutional right by Ellis, insofar as any of Hornsby's actions are imputed to Ellis, the district court erred in failing to grant summary judgment on the basis of those assumed facts.

## A.

We review the denial of summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

We view facts in the light most favorable to the non-movant and draw all reasonable inferences in her favor. *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994). If the non-movant sets forth specific facts in support of allegations essential to her claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. *Id.*

## B.

In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race. *See Washington v. Davis*, 426

10

U.S. 229, 238-42 (1976); *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir. 1996).  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977).

Likewise, a cause of action for racial discrimination in the making and enforcement of contracts, under § 1981, requires the plaintiff to demonstrate intentional discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *National Ass'n of Gov't Employees v. City Pub. Servs. Bd.*, 40 F.3d 698, 714 (5th Cir. 1994).  Finally, to recover damages for a conspiracy to deny individuals the equal protection of the laws under § 1985 the plaintiff must demonstrate that the defendants were motivated by an invidious discriminatory animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Almon v. Sandlin*, 603 F.2d 503, 505 (5th Cir. 1979).

Consequently, to assert a violation of a constitutional right, Coleman must prove that Ellis intentionally discriminated against her on the basis of race.  Invidious discriminatory animus is the *sine qua non* of a constitutional claim of racial discrimination. In the instant case, however, this necessary prerequisite has not been satisfiedSSat least, not on the basis of the district court's assumed facts that form the only basis for this appeal.

The district court assumed, for purposes of summary judgment, that Ellis did *not* discriminate intentionally against Coleman. Indeed, the court expressly rejected any allegation that Ellis had

11

been motivated by an invidious discriminatory animus. Instead, the court assumed that Ellis had acted not of her own volition, but merely as Hornsby's unwitting (or unwilling) instrument.

We need not determine whether this factual assumption was accurate; indeed, as we have previously discussed, we do not have appellate jurisdiction to review the sufficiency of the evidence. *Jones*, 115 S. Ct. at 2156; *Nerren*, 86 F.3d at 472. For purposes of this interlocutory appeal, we are obliged to take, as given, the facts the district court assumed, and our inquiry is limited to the narrow question of whether those facts are sufficient to state a claim under clearly established law. *Behrens*, 116 S. Ct. at 842; *Nerren*, 86 F.3d at 472. Because the court assumed that Ellis did not discriminate intentionally against Coleman, the necessary prerequisite to a constitutional claim of racial discrimination was not satisfied, and therefore the facts assumed were not sufficient to state a claim of racial discrimination under clearly established law.

Nevertheless, although it assumed that Ellis had not discriminated intentionally against Coleman, the court refused to grant Ellis qualified immunity, solely because a genuine issue of material fact existed as to Hornsby's motives. The court concluded that Hornsby's alleged discriminatory intent could properly be imputed to Ellis, his subordinate, for purposes of the qualified immunity inquiry. This conclusion, which would create a rule of *respondeat inferior*, was both unprecedented and erroneous.

Neither the district court nor Coleman cites any authority,

12

nor are we aware of any, holding that the discriminatory intent of one official may be imputed to another for purposes of imposing individual liability under the civil rights laws. To the contrary, it is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior.* Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.[5] Insofar as the district court assumed that Ellis had not discriminated intentionally against Coleman, therefore, the necessary prerequisite to a constitutional claim of racial discriminationSSinvidious discriminatory animusSSwas absent, and Ellis was entitled to qualified immunity.

The rule of vicarious liability apparently adopted by the district court and advocated by Coleman is more sweeping than is the traditional doctrine of *respondeat superior.* Such an unprece-dented rule of vicarious liability would impose individual liability upon subordinates for the acts and omissions of superi-ors, over whom they have neither control nor authority, thereby creating a new liability theory of *respondeat inferior.* As the Tenth Circuit, the only court previously to confront this novel

---

[5] *See, e.g., Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 601 (5th Cir. 1988); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir. 1987), *overruled on other grounds, Walton v. Alexander*, 44 F.3d 1297, 1303 n.4 (5th Cir. 1995) (en banc); *Kline v. North Tex. State Univ.*, 782 F.2d 1229, 1235 (5th Cir. 1986); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985). "Section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989) (holding that a school district may not be held vicariously liable for a violation of § 1981 solely on a theory of *respondeat superior*); *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipal-ity may not be held vicariously liable for constitutional torts under § 1983 solely on a theory of *respondeat superior*).

13

theory of vicarious liability, has explained,

> we know of no authority for imputing a principal's *discriminatory intent* to an agent to make the agent liable for his otherwise neutral business decision. Similarly, while discriminatory practices of an agent may be imputed back to a principal to render the principal liable for its agent's statutory violations, we have found no authority for imputing statutory liability in the opposite direction, from a culpable principal to an innocent agent.

*Brownlee v. Lear Siegler Management Servs. Corp.*, 15 F.3d 976, 978 (10th Cir. 1994) (citation and footnote omitted); *see also Haynes v. Williams*, 88 F.3d 898, 899-900 (10th Cir. 1996).

Therefore, in light of the federal courts' refusal to recognize even traditional *respondeat superior* liability under § 1983, the district court erred in endorsing a new theory of *respondeat inferior* liability. Accordingly, Ellis was entitled to qualified immunity under the assumed facts.


IV.

Finally, we emphasize that our decision in this interlocutory appeal is limited to the narrow legal proposition that a district court may not impute the alleged discriminatory motivations of a superior to a subordinate for purposes of the qualified immunity analysis. We reaffirm that individual liability under § 1983 is predicated on the acts or omissions of the respective individual defendant, and the principles of vicarious liabilitySSwhether the classic rule of *respondeat superior* or the novel rule of *respondeat inferior*SSare inapposite to constitutional claims of discrimination.

14

For purposes of this interlocutory appeal, we are obliged to take, as given, the facts assumed by the district court, and to determine whether they state a claim under clearly established law. Therefore, we opine only that the district court erred in concluding that the alleged discriminatory motivations of Hornsby could be imputed to Ellis for purposes of the qualified immunity analysis, and we express no opinion as to whether the court erred in assuming that Ellis did not intentionally discriminate against Coleman; nor do we consider whether a genuine issue of material fact exists concerning the allegations of intentional discrimination on the part of Ellis.[6]  On remand, the district court is free to entertain this alternate ground for denying qualified immunity.

## V.

The order denying qualified immunity is REVERSED, and this case is REMANDED with instructions to dismiss all claims pending against Ellis in her individual capacity, unless it should otherwise appear that qualified immunity is inappropriate.[7]

---

[6] Indeed, as we have said, because such a determination would require us to evaluate the sufficiency of the evidence underlying the claim, we would not have jurisdiction to engage in such an inquiry on an interlocutory appeal from a denial of summary judgment on the basis of qualified immunity.  *See Jones*, 115 S. Ct. at 2156; *Cantu*, 77 F.3d at 802-03.

[7] Because the determination of whether a plaintiff has alleged a violation of a clearly established constitutional right is the first inquiry in the qualified immunity calculus, we need not consider Ellis's remaining claims in this appeal.  *See Siegert*, 500 U.S. at 227.

EMILIO M. GARZA, Circuit Judge, specially concurring:


The district court committed two fundamental legal errors.[8] First, the "district court *assumed,* for purposes of summary judgment, that Ellis did not discriminate intentionally against Coleman," without considering the evidence before it.  By doing so it violated a basic principle of summary judgment law:  At the summary judgment stage, we look at the summary judgment record in the light most favorable to the non-movant, not the movant, in this case, Ellis.  *See Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

Furthermore, by doing so, the district court passed over the only material issue of fact before the district court:  "[T]he *sine qua non* of a constitutional claim of racial discrimination"))the invidious discriminatory animus, if any, of Ellis.  Coleman had "to assert a violation of a constitutional right, [that is] Coleman [had to] prove that Ellis intentionally discriminated against her on the basis of race."   Instead, the district court held "that Hornsby's alleged discriminatory intent could properly be imputed to Ellis, his subordinate."   Obviously, "[s]ummary judgment is

---

[8] Accordingly, I agree with the majority that we have appellate jurisdiction to decide this interlocutory appeal.  *See Johnson v. Jones*, ___ U.S. ___, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995).  I question, however, the majority's continuous use of "assumed" facts because of the danger it may be misconstrued to pervert basic summary judgment law that requires a summary judgment record. *See* FED. R. CIV. P. 56(c).  Clearly, in *Jones*, the Supreme Court was referring to the summary judgment record when it stated "the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason."  *See Jones*, 115 S. Ct. at 2159 ("[W]e hold that a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not *the pretrial record* sets forth a ‹genuine' issue of fact for trial.")(emphasis added).

appropriate only <if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. 56(c)." Because I agree with the majority that "a rule of respondent inferior [is] both unprecedented and erroneous," under Rule 56, it is also not a material issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material.").

For these reasons, I concur in the judgment of the court.