**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-20228

_____


NAWARUT CHARUPATANAPONG, also known as Nancy Lee Lim,

Plaintiff-Appellee,


VERSUS


UNIVERSITY OF HOUSTON; ET AL

Defendants,

MUSTAFA F. LOKHANDWALA; MARK A. STRATTON; BHAGAVAN JANDHYALA,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Southern District of Texas
(H-99-CV-2858)
May 15, 2002

Before DUHÉ, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Mustafa F. Lokhandwala ("Lokhandwala"), Mark A. Stratton ("Stratton"), and Bhagavan Jandhyala ("Jandhyala") (collectively, "Appellants") appeal the district court's denial of summary judgment based on their qualified immunity defense. Because the genuine issues of fact that exist are material to whether

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellants' actions in denying tenure were objectively reasonable, relevant to step two of the qualified immunity test, we affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

In 1993, the University of Houston ("the University") hired Nawarut Charupatanapong ("Appellee"),[1] an Asian female, as an assistant professor in its College of Pharmacy ("COP"). Appellee applied for and was denied tenure three times. Only her 1998 application is at issue here.

The tenure process in the COP is multi-tiered, and reviews at every level are considered in the final decision. First, the department chair recommends for or against tenure. Then, the College Promotion and Tenure Committee ("College Committee"), composed of COP faculty, reviews the case and makes a recommendation. Next, the Dean of the COP makes a recommendation, followed by a University-wide Promotion and Tenure Committee ("University Committee"), composed of faculty drawn from the University as a whole. After considering all of these evaluations, the Provost of the University ("Provost") makes a recommendation to the President of the University, who ultimately makes the tenure decision.

When evaluating a candidate for tenure, reviewers at the University consider three categories of performance - research and

---

[1] In the depositions and documents presented to the courts, Appellee is also referred to as Nancy Lee Lim or Nancy Lee.

2

scholarship, including the volume and quality of a candidate's work, research proposals, and secured funding; teaching; and service.

Stratton, the chair of Appellee's department, conducted Appellant's first performance review in 1994, and noted his concern about the lack of focus in her scholarship. Appellee claims that thereafter Stratton discriminated against her in work assignments and grant opportunities. In July 1995, she complained of this to Stratton, and he told her if she was unhappy, she should find a job elsewhere.[2] She later complained to Lokhandwala (the Dean of the College), and filed a complaint with the University's Affirmative Action Office ("AAO"). In March 1997, Appellee filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and the next month she filed a complaint with the University Grievance Committee ("UGC").

When Appellee was considered for tenure in 1998, Stratton, the College Committee, and Lokhandwala all recommended against tenure. The University Committee voted in favor of tenure. Finally, the Provost recommended against tenure and Appellee was denied tenure.

Appellee was terminated in 1999 as a result of being denied tenure. She filed a second EEOC charge based on her 1998 denial of

---

[2] This fact is disputed; however, in the context of this appeal we assume it to be true. In reviewing a denial of summary judgment on the basis of qualified immunity, the facts assumed by the district court are taken as true and are viewed in a light most favorable to the Appellee. See Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 531-32 (5th Cir. 1997).

3

tenure, and sued the University and individual defendants alleging race-based and gender-based discrimination and retaliation, actionable under Title VII and 42 U.S.C. §§ 1981, 1983, 1985, and 2000. At the close of discovery, Appellants filed a Motion for Summary Judgment on the basis of qualified immunity. The district court denied that motion, and appellants timely filed their appeal.

STANDARD OF REVIEW

This court reviews the district court's denial of a motion for summary judgment based on qualified immunity de novo. See Lukan v. North Forest Indep. Sch. Dist., 183 F.3d 342, 345 (5th Cir. 1999). The facts assumed by the district court are taken as true and are viewed in a light most favorable to the Appellee. See Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 531-32 (5th Cir. 1997).

DISCUSSION

The district court granted and denied summary judgment to the defendants in this case on a multitude of grounds. See Nancy Lee Lim v. University of Houston, et al, No. H-99-2858, slip op. (S.D. Tex. Feb. 21, 2001). All that is appealed is the denial of summary judgment based on qualified immunity.

*Jurisdiction*

Ordinarily there is no appellate jurisdiction to review immediately the denial of a motion for summary judgment. However, "[u]nder the collateral order doctrine, a small class of interlocutory orders that (1) conclusively determine, (2) important

4

issues, which are separate from the merits of the action, and (3) which would be effectively unreviewable on appeal from a final judgment, are deemed 'final' for purposes of appeal." <u>Cantu v. Rocha</u>, 77 F.3d 795, 802 (5th Cir. 1996).

"District court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, notwithstanding their interlocutory character, when based on a conclusion of law." <u>Coleman</u>, 113 F.3d at 531. When a district court denies summary judgment because genuine issues of material fact exist, as was done here, it makes two distinct conclusions – that there are "genuine" issues of fact in dispute, and that those issues are "material". This court may not review a factual conclusion that issues of fact are genuine, <u>see</u> <u>Behrens v. Pelletier</u>, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed. 2d 773 (1996), but we can review a district court's legal conclusion that an issue of fact is material. <u>See</u> <u>Bazan v. Hidalgo County</u>, 246 F.3d 481. 490 (5th Cir. 2001). A fact is "material" if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Thus we have jurisdiction to determine whether the genuine issues of fact the district court found may affect the outcome of the suit.

*Qualified Immunity Test*

In determining whether a public official is entitled to

qualified immunity, this court applies a two-step analysis. First, we "determine whether [Appellee] charge[d] conduct violating clearly established federal rights." Chrissy F. by Medley v. Mississippi Dep't of Public Welfare, 925 F.2d 844, 851 (5th Cir. 1991). Second, we must determine whether Appellants' "conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred." Glenn v. Tyler, 242 F.3d 307, 312 (5th Cir. 2001).

*Clearly Established Right*

We are first faced with the question whether the genuine issues of fact found by the district court are material to whether the Appellee has alleged the violation of a clearly established federal right. See Foster v. City of Jackson, 28 F.3d 425, 429 (5th Cir. 1994).

The district court found no genuine issue of fact regarding this first step of the analysis. It found that "[Appellants] do not dispute that denial of tenure because of [Appellee's] race or gender, or in retaliation for complaining of discrimination, violates rights that were 'clearly established' during the relevant period." Lim, No. H-99-2858, slip op. at 22. We have no jurisdiction to review that factual conclusion. Thus, we turn to the second step, whether the genuine issues of fact found by the district court are material to whether Appellants' actions were objectively reasonable in light of clearly established law.

6

*Objective Reasonableness*

The second prong of the qualified immunity test is whether Appellants' actions were objectively reasonable in light of clearly established law. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987). Our inquiry is whether the genuine issues of fact are material to whether a reasonable decision-maker could have believed he was violating a person's federally protected rights under the circumstances. See id. at 641.

Appellants argue that reasonable professors could have disagreed on whether to vote for or against tenure. They put forth as evidence the fact that the College Committee recommended against tenure, and it is not alleged that every member of that committee was driven by discriminatory animus, nor is it alleged that every member of the College Committee was retaliating against Appellee. Appellee responds with evidence suggesting that those committee members, while not themselves acting with discriminatory or retaliatory animus, were influenced by Appellants, and thus cannot be considered "reasonable" decision-makers for purposes of this inquiry. This creates a genuine issue of fact. On review, we find that issue of fact material to the question of objective reasonableness with respect to both alleged violations.

CONCLUSION

Because the genuine issues of fact found by the district court are material to whether Appellants acted objectively reasonably in

denying Appellee tenure, we AFFIRM the district court's denial of summary judgment and REMAND for further proceedings.