United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

02-30913
Summary Calendar

_____

MARK E. MARCHIAFAVA; NICOLE BEAN; LINDA GLAVIANO; CHRISTIE LYNN
MARCHIAFAVA; TADDI BROWN; MELINA ARNOLD; TERRI WARNER,

Plaintiffs-Appellants,

VERSUS

MICHAEL R. BARNETT, Chief Criminal Deputy; ELMER LITCHFIELD,
Sheriff; CALLENDER, Deputy Sheriff; CHARLES E. P. SPURLOCK,  DR.;
THERESITA JIMENEZ, DR.; RALPH WILLIAMS, Lieutenant; TOMMY RICE,
Lieutenant; DENISE M. GRAHAM, DR.,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
(00-CV-111-D)

_____

Before JONES, DUHÉ and CLEMENT, Circuit Judges.

PER CURIAM:[1]

---

[1] Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion
should  not  be  published  and  is  not  precedent  except  under  the  limited
circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Plaintiffs-appellants Mark Marchiafava and several coworkers at his place of business filed this suit for civil rights violations including unlawful search and seizure and detention, civil conspiracy, and (Marchiafava only) unlawful confinement. The district court summarily dismissed the complaint, finding no evidence of the unreasonableness of Defendants' actions under the circumstances, and holding that Defendants were entitled to qualified immunity. After de novo review, we affirm.

## I.

The summary judgment evidence showed that Defendant Colonel Michael A. Barnett of the East Baton Rouge Parish Sheriff's Office executed a sworn statement in connection with an application to have Marchiafava taken into protective custody. Col. Barnett attested that he had received information from a state representative that Marchiafava had telephoned legislative and other state offices stating that he had acreage in Tunica Hills which he was reserving as a cemetery for legislators, and that he agreed 100% with Timothy McVeigh; in another call Marchiafava said only "boom." Barnett also detailed a phone call from the Baton Rouge Police Chief that a news reporter had informed him that Marchiafava had stated that he was being harassed by police, and that he would use deadly force the next

2

time he was unlawfully stopped by a police officer. Finally, Barnett attested to his personal knowledge that Marchiafava habitually carried a handgun and had the means at hand to carry out threats.

Reporting these threats to the parish coroner, Barnett signed a protective-custody application stating, "APPLICANT STATES: PT [patient] HAS MADE A STATEMENT THAT HE HAS A LEGAL RIGHT TO KILL ANY POLICE OFFICER WHO STOPS HIM. TWO WEEKS AGO, HE TOLD SOMEONE HE WAS LOOKING FOR LAND SO HE COULD BURY 250 LEGISLATORS. PT CARRIES A GUN."

The Coroner issued an order for the sheriff's office or police department to take Mr. Marchiafava into protective custody and deliver him to the Coroner's office for an evaluation, pursuant to Louisiana involuntary commitment law. La. Rev. Stat. Ann. § 28:53.2.

The next day at Marchiafava's place of business, eight to ten deputies, two of whom are Defendants-Appellants Captain Ralph Williams and Lieutenant Tommy Rice, participated in taking Marchiafava into custody. According to the affidavits, Williams and Rice made a protective sweep of the building, during which they encountered one or two of the coworker plaintiffs and directed them to the front of the building. Williams and Rice

3

then departed without touching or questioning any of the Plaintiffs. (The Plaintiffs who complain of having been touched did not identify these two Defendants-Appellants).

Upon delivery to the coroner's office for psychiatric evaluation, Marchiafava was examined by defendant Charles Spurlock, M.D., Deputy Coroner for East Baton Rouge Parish. Marchiafava was uncooperative and refused to talk to Dr. Spurlock except that he denied making the statements noted in Col. Barnett's application. Dr. Spurlock signed a Physician's Emergency Certificate (or PEC), finding Marchiafava to be "dangerous to others," and authorizing his transport to Baton Rouge Mental Health Center for psychiatric examination. After a brief examination, he was transported to Greenwell Springs Hospital for further evaluation and treatment.

There Defendant Theresita Jimenez, M.D., had a duty to evaluate Marchiafava. She reported Marchiafava's hostile behavior and refusal to cooperate in her evaluation. She was unable to definitively diagnose him but provisionally diagnosed him with "schizoaffective disorder, manic." During Marchiafava's stay, several different doctors attempted to complete his evaluation, and none was successful due to Marchiafava's

4

continued refusal to cooperate. Dr. Jimenez determined that further evaluation was needed.

Meanwhile, Marchiafava asked for a probable cause hearing in state district court seeking his release. At a hearing held thirteen days after his admission date, the court found probable cause to keep Marchiafava hospitalized for evaluation and treatment. Further evaluation eventually resulted in an opinion that Marchiafava did not suffer from a major mental illness and was not a danger to himself or others. He was then released from Greenwell Springs Hospital.

Marchiafava has sued Col. Barnett, Dr. Spurlock, Dr. Jiminez, Capt. Williams, Lt. Rice and others (not at issue in this appeal) claiming they unlawfully searched, detained, and confined him, violating his constitutional rights. The other Plaintiffs, coworkers at Marchiafava's place of business, have sued the deputy Defendants under § 1983 alleging civil rights violations. The Defendants all filed motions for summary judgment, and the trial court has dismissed all claims.

## II.

We review a summary judgment dismissal de novo, applying the same standard of review as the district court, to determine whether the record discloses any genuine issue as to a material

5

fact.  <u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 474 (5th Cir. 1989).  If the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment is appropriate and there is no issue for trial. <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

III.

All the defendants in this appeal were government officials sued for actions done in the performance of their official duties.  Qualified immunity protects government officials from individual liability for performing discretionary functions unless their conduct violates clearly established rights of which a reasonable person would have known.  <u>Coleman v. Houston Indep. School Dist.</u>, 113 F.3d 528, 532-33 (5th Cir. 1997).

The right "to be free from deprivation of liberty due to an alleged wrongful involuntary commitment" is a clearly established right under the Due Process Clause.  <u>Vitek v. Jones</u>, 445 U.S. 480, 491-92 (1980).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 644, 107 S. Ct. 3034, 3041, 97 L.Ed.2d 523 (1987).

6

Under the protective custody procedure, the coroner reviews allegations leading to the affiant's belief that the person is mentally ill and then determines whether the person should be taken into protective custody for an immediate examination. La. Rev. Stat. Ann. § 28:532. After examination of the person, the coroner or other physician makes a medical determination whether the person needs immediate treatment because he is dangerous to himself or others or gravely disabled; if so, he issues a PEC for admission to a treatment facility. La. Rev. Stat. Ann. § 38:53(B).

The evidence reveals no question of material fact precluding a finding as a matter of law that Col. Barnett acted reasonably in executing his affidavit in support of a coroner's order for protective custody. He accurately presented the information given him. Further, Col. Barnett and reasonably believed the sheriff's office should execute the coroner's order. He is entitled to qualified immunity.

Captain Williams and Lieutenant Rice, too, reasonably believed a security sweep of the building was justified to protect the deputies engaged in apprehending Marchiafava. The summary judgment evidence demonstrates that they had information that Marchiafava was likely to be armed and posed a threat to

arresting officers. The record discloses no question of fact impugning the appropriateness of the conduct of those defendants with respect to either Marchiafava or his co-workers. They are entitled to qualified immunity.

Under the circumstances Dr. Spurlock's decision to sign the PEC was also reasonable. By conducting a brief examination of the plaintiff in compliance with Revised Statutes § 28:53 B(1), Dr. Spurlock performed the duty required by law. The uncontroverted evidence revealed that, from Dr. Spurlock's perspective, Marchiafava was hostile, uncooperative, and had threatened violence toward others. He acted reasonably in deciding to remand Marchiafava to a mental health facility for further evaluation by a psychiatrist. Thus, Dr. Spurlock is entitled to qualified immunity from civil liability for his conduct while in the course of his official duties.[2]

Despite the repeated efforts by Dr. Jimenez to examine Marchiafava during the 72-hour period allowed by law, Marchiafava was not willing to submit to an evaluation and refused to cooperate. Dr. Jimenez complied with the law which allows an

---

[2] Affirming the dismissal of Dr. Spurlock on grounds of qualified immunity, we need not reach Dr. Spurlock's alternative argument that the state judge's probable cause ruling precluded Marchiafava's claims pursuant to Heck v. Humphrey, 512 U.S. 477 144 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

8

extension of the initial period for an additional fifteen days, via a Physicians Emergency Certificate (PEC). La. Rev. Stat. Ann. § 28:53A(2). She had decided that further evaluation was necessary and did so extend, so that a complete psychiatric evaluation could be conducted. After Marchiafava's probable cause hearing, Dr. Jimenez was removed from the case; another doctor was assigned by the court to complete plaintiff's evaluation. Because Dr. Jimenez acted in an objectively reasonable manner, she is entitled to qualified immunity.

The Plaintiff offered no more than conclusory statements to support his allegations of a conspiracy to violate his rights, insufficient to defeat a summary judgment motion. Lynch v. Cannatella, 810 F.2d 1363, 1369-1370 (5th Cir. 1987).

IV.

The district court correctly dismissed Plaintiffs' suit because Plaintiffs failed to show that the conduct of Defendants was not objectively reasonable. Further, Plaintiffs failed to meet the burden of producing evidence of conspiracy. The judgment dismissing Defendants is in all respects

AFFIRMED.

9