# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60262

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2018

Lyle W. Cayce
Clerk

CATHRYN STOUT; RAYMOND MONTGOMERY, JR.,

      Plaintiffs - Appellants

v.

STAFF SERGEANT BRAD VINCENT, Director of Criminal Interdiction/K-9 Operations in his official and individual capacities,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-780

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

We decide whether the district court erred when granting summary judgment in favor of a police officer on the racial profiling claims of a black couple. The district court found that the couple failed to raise any genuine issue

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60262

of material fact showing that the officer violated their equal protection rights under the Fourteenth Amendment. We affirm.

## Facts and Proceedings

Cathryn Scott Stout and Raymond Montgomery, Jr., who are black, were travelling together from Memphis, Tennessee in a Lexus sport utility vehicle ("SUV") on Interstate 55 through central Mississippi. Montgomery noticed Mississippi Highway Safety Patrol ("MHSP") cars parked on the median. Soon after they passed the cars, Trooper Patrick Wall drove up along the side of their SUV in the left lane and looked at them. He then dropped behind their vehicle and turned on his lights and siren. Montgomery, who was driving, pulled over, but he did not feel nervous because he was not speeding and he believed he had done nothing wrong.

Trooper Wall asked Montgomery to step out of the car to show him that the SUV's license plate was partially obscured by a tag holder. The tag holder bore the logo and colors of the Alpha Kappa Alpha Sorority, Inc. ("AKA"), a black sorority to which Stout belonged. Trooper Wall explained to Montgomery that the MHSP was attempting to "crack down" on drivers with tag holders that obscured their plates. Trooper Wall said he would not issue a ticket for the obscured plate, but he asked for Montgomery's license and permission to search the vehicle. Montgomery refused consent for the search.

Trooper Wall called Staff Sergeant Vincent for backup, informing him that Stout and Montgomery were "argumentative and difficult to deal with." When Officer Vincent arrived, Trooper Wall told him that Montgomery exhibited unusual signs of nervousness and the SUV's occupants had offered conflicting stories about where they were traveling, the purpose of their trip, and how long they intended to stay in Mississippi. Officer Vincent questioned the passengers himself. Stout informed Officer Vincent that she was in the state to perform research for her doctoral degree at Saint Louis University. But

No. 17-60262

Officer Vincent had trouble remembering this fact once litigation had commenced. He remembered only that one of the passengers had explained that they were traveling to a concert.[1]

Officer Vincent informed Stout and Montgomery that troopers can run the license of all individuals in a car to check their criminal histories and ensure that they are not wanted for arrest. He further explained that the Mississippi Department of Public Safety uses minor infractions as a pretext to stop for criminal investigations. He said, "The more people we contact, the more people we check out, the more likely we are to catch somebody up to no good."

Trooper Wall ran a check on Montgomery's Tennessee driver's license. The computer showed that he had prior arrests for both possession of narcotics and intent to distribute narcotics. Officer Vincent's training and many years of experience in drug interdiction made him aware that Interstate 55 is used often to transport drugs, particularly between Jackson, Mississippi and Memphis, Tennessee. Officer Vincent requested permission to search the vehicle, but was denied.

Officer Vincent called for a K-9 officer, and Deputy Joseph Mangino soon arrived with his dog. Officer Vincent instructed Montgomery and Stout to turn off their car, get out of the vehicle, and stand away from each other and the car while the dog sniffed around the SUV.[2] When the dog picked up a "suspicious"

---

[1] Officer Vincent remembered that the passengers gave him conflicting answers as to the purpose and length of their stay in Mississippi. Montgomery and Stout deny that they gave conflicting answers to these questions. Because of the procedural posture, we view all factual disputes in a light most favorable to Appellants. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

[2] Officer Vincent told Montgomery and Stout that the dog would sit and freeze if it detected drugs. They never saw the dog sit and freeze. Stout began recording the beginning of the inspection on her phone's camera. Vincent ordered her to put the camera away, and she complied. The limited footage she obtained does not show the dog barking or making any other signals to the troopers.

3

No. 17-60262

scent from inside the vehicle, the officers searched the SUV.[3] The inspection was thorough, and more than an hour passed from the initiation of the stop until the officers finally allowed Appellants to leave without issuing a citation.

Stout and Montgomery sued Officer Vincent,[4] seeking injunctive relief and damages for violation of their Fourteenth Amendment rights under 42 U.S.C. § 1983.[5] Specifically, they alleged that impermissible considerations of race motivated their extended detention by Officer Vincent. Officer Vincent moved for summary judgment on the basis of qualified immunity, and the district court granted his motion, concluding Appellants "have not presented any evidence" in support of their claim that Officer Vincent's conduct "was at least partially based on their race." Stout and Montgomery appealed.

## Standard of Review

The court reviews a district court's grant of summary judgment based on qualified immunity de novo. *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

## Discussion

On appeal, Stout and Montgomery raise only one issue: whether the district court erred when concluding there was no genuine issue of material fact that Officer Vincent's actions were impermissibly motivated by race.

---

[3] The parties' accounts of the search differ. Stout and Montgomery insist that no drugs were found in the vehicle. Officer Vincent claims he found marijuana residue on the floorboard of the vehicle and a piece large enough to be easily identified as marijuana. Because the quantity of the marijuana was small, the officers did not issue a citation. We reiterate that we view all factual disputes in a light most favorable to Appellants. *See Tolan*, 134 S. Ct. at 1866.

[4] Trooper Wall was not properly served and is not a party to this appeal.

[5] On appeal, Stout and Montgomery have abandoned their claims under the First and Fourth Amendments.

4

No. 17-60262

## I. Legal Standard

*A. Summary Judgment*

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has explained that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But the moving party has no need to negate its opponents' claims. *See id.*

If the moving party meets its burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmovant's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotation marks omitted).

A court must view all evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). In *Tolan v. Cotton*, the Supreme Court stressed "the importance of drawing inferences in favor of the nonmovant" in qualified immunity cases. *Id.* If a district court credits evidence of the party seeking summary judgment but fails to properly acknowledge key evidence offered by the nonmoving party, it misapprehends the summary judgment standard. *See id.* at 1867–68.

No. 17-60262

*B. Qualified Immunity*

The Supreme Court has articulated a two-part question for any qualified immunity determination: First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, we ask "[w]hether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks omitted). An official's qualified immunity defense prevails "[i]f no constitutional right would have been violated were the allegations established." *Saucier*, 533 U.S. at 201.

"The Plaintiff bears the burden of proving that a government official is not entitled to qualified immunity." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005). This burden is not easy to meet because qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violated the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

*C. Fourteenth Amendment Racial Profiling*

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Id.*[6]

---

[6] When granting summary judgment for Officer Vincent, the district court relied in part on an unpublished opinion from this court holding that a plaintiff's Fourteenth Amendment racial profiling claim fails unless the plaintiff's evidence establishes "that race was the agents' sole motivating factor or that they knowingly were engaging in any illegal conduct." *United States v. Vandyck-Aleman*, 201 F. App'x 215, 218 (5th Cir. 2006). Montgomery and Stout contend that this court has not adopted the "sole motivating factor" standard in a published opinion. In light of our conclusion, discussed below, that Stout and

Claims of racially selective law enforcement "draw on ordinary equal protection standards." *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) (internal quotation marks omitted); *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (internal quotation marks omitted)).

In another context, we have said that a plaintiff's "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983). Thus, a plaintiff's "subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment." *Raina v. Veneman*, 152 F. App'x 348, 350 (5th Cir. 2005).

Finally, "discriminatory intent of one official may [not] be imputed to another for purposes of imposing individual liability under the civil rights laws." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

II. Lack of Evidence of Fourteenth Amendment Violation

The district court concluded that Montgomery and Stout "have not presented any evidence to support [their] claim" that Officer Vincent's decision to detain them was "at least partially based on their race." The district court further concluded that Montgomery and Stout "have likewise not shown that their race played any role whatsoever in Vincent's formulation of a reasonable

Montgomery have failed to produce *any* material evidence showing that race motivated Officer Vincent's conduct, we need not address the issue.

suspicion or wrongdoing, or in the actions that were taken by him to dispel that suspicion."

On appeal, Montgomery and Stout detail the evidence they claim demonstrates Officer Vincent's discriminatory intent and unequal treatment:

- They were traveling from Memphis, Tennessee to Jackson, Mississippi, which are both predominantly black cities.
- They are both black.
- They were driving a Lexus SUV.
- Stout believed "[they] were being held because [they] are African American and for no other reason."
- Montgomery also believed "it appeared that the only reason [Officer Vincent] was keeping [them] was that [they] were black and driving a Lexus."
- Officer Vincent later remembered that Stout and Montgomery had indicated that the purpose of their trip to Mississippi was a concert when in fact they had told him they were in Mississippi for Stout's graduate student research. According to Stout and Montgomery, this lapse is evidence that Officer Vincent had discriminatory intent because "he did not see a highly educated Black woman and her partner; he saw two Black people in a nice car going to a concert."
- No trooper issued them a ticket or citation, even though the officers claim they found marijuana in the SUV.
- They both stated there was no marijuana in the car that day.
- On the day before Officer Vincent detained Appellants, the City of Mound Bayou approved a resolution against the racial profiling of people of color by the MHSP. The mayor of Winstonville also condemned racial profiling of black people by the MHSP. Officer Vincent has been with the MHSP since 1997.

In light of this evidence, Montgomery and Stout argue that the district court misapplied the summary judgment standard when it concluded that they failed to raise a genuine issue of material fact. They stress that, after the Supreme Court's decision in *Tolan*, this evidence must be viewed as a whole, and not in individual pieces. *See Tolan*, 134 S. Ct. at 1867–68. And the evidence must be viewed in a light most favorable to them. *Id.* at 1866.

The Supreme Court's decision in *Tolan*, however, does not relieve a nonmoving party of its burden to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial" after a moving party meets its "initial responsibility." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). Nor does it allow nonmovants to satisfy their burden with metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *See id.*

We have no reason to doubt the genuineness of Montgomery and Stout's subjective belief that Officer Vincent detained them only because they are black. But we cannot accept such evidence as a basis for providing judicial relief. *See Elliott*, 714 F.2d at 567. Because we are not permitted to impute any alleged discriminatory intent of Trooper Wall to Officer Vincent for the purpose of imposing individual liability under § 1983, we cannot consider any evidence of racial profiling that occurred before Officer Vincent arrived on the scene. *See Coleman*, 113 F.3d at 534. Moreover, we cannot attribute the general evidence of racial profiling by the MHSP condemned by the mayor of Winstonville and the City of Mound Bayou to Officer Vincent. *See id.*

With this evidence removed, all that remains of Appellants' case is that they, a black couple, were detained when driving a nice car on a Mississippi road by an officer who did not write them a ticket and who could not remember their purpose for visiting the state. Even when viewed as a whole, this evidence

No. 17-60262

fails to show that there is a genuine issue for trial regarding whether Officer Vincent treated them unequally and acted with discriminatory intent.

Although Appellants dispute Trooper Wall's report that they were acting nervous and that they gave conflicting accounts as to the purpose of their trip in Mississippi, this does not create a fact issue because Officer Vincent was allowed to rely on the information provided to him by a fellow officer. *See United States v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014). In light of the report he received from Trooper Wall, the fact that Montgomery had previously been arrested for distributing narcotics, and the fact that Interstate 55 is often used to transport drugs, Officer Vincent had nondiscriminatory reasons to continue detaining Appellants after the initial stop and request assistance from the K-9 officer.

Because Appellants failed to provide any evidence that Officer Vincent acted with discriminatory intent or treated them unequally, they cannot show there are any genuine issues of fact warranting a trial on their Fourteenth Amendment claim of racial profiling. Thus, Officer Vincent's qualified immunity claim prevails because "no constitutional right would have been violated were the allegations established." *Saucier*, 533 U.S. at 201. Accordingly, we conclude the district court did not err when it granted summary judgment in favor of Officer Vincent.[7]

## Conclusion

We AFFIRM the district court's order granting summary judgment in favor of Officer Vincent, who enjoys qualified immunity from Stout and Montgomery's Fourteenth Amendment racial profiling claim.

---

[7] In light of our conclusion that the district court correctly applied the summary judgment standard, we do not address Officer Vincent's alternative argument that Appellants failed to properly allege in their First Amended Complaint that he detained them and searched their vehicle because of their race.

10