**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-21158

OLUFEMI ANTHONY LUKAN,

Plaintiff-Appellee,

VERSUS

NORTH FOREST ISD; et al.,

Defendants,

GLORIA S. SCOTT, L.V. BRISCO,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

July 28, 1999

Before EMILIO M. GARZA, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Olufemi Lukan filed suit against the North Forest Independent School District, Dr. Gloria S. Scott, and L.V. Brisco, alleging a free speech retaliation claim under 42 U.S.C. § 1983 and a state law claim under the Texas Whistleblower Act. The district court denied the Appellants' motion for summary judgment on the ground of qualified immunity. We reverse.

## I.   FACTS AND PROCEEDINGS

Lukan was first employed by the North Forest Independent School District ("NFISD") in 1986. Initially, he worked as an

accounting supervisor for three years under L.V. Brisco in the district's business office. In 1989, Lukan was promoted to the district's internal auditor position, where he responsible for informing the superintendent of the district's financial affairs and working with external auditors on audits for the year.

In April, 1996, Dr. Gloria S. Scott succeeded Dr. Carroll Thomas as the NFISD superintendent. In July, 1996, Scott reorganized the entire NFISD administrative office. As a part of the reorganization, Lukan, on Scott's recommendation and the school board's approval, was appointed to the newly created position of director of financial services. At this time, Scott contracted with an independent public accounting firm, Saul & Pechacek, to audit the district's finances.

In August, 1996, Lukan discovered financial improprieties in the business office. Lukan was confronted with requests from Scott and Brisco for payments to a construction company that appeared to circumvent the competitive bidding process. Lukan also found that two laptop computers disappeared from the district that were reported stolen from Brisco's home during a burglary. Brisco's personal insurance paid him for the loss of the computers and he had not yet paid the district for the losses. In addition, Lukan discovered a questionable financial entry showing $7.3 million attributed to a miscellaneous expenditures account. Finally, Lukan noticed that Scott and Brisco had approved questionable wire transfers of nearly $2.1 million to a third party with little or no documentation. As a result, Lukan reported the suspected financial improprieties to the Texas Education Authority ("TEA") and the Harris County district attorney's office.

The record reflects that the district had a considerable number of financial problems in addition to the suspected

2

improprieties that Lukan discovered. In September, 1996, Scott received the special audit report from Saul & Pechacek which was critical of the district's finances. The report noted that the district's bank accounts had not been reconciled in approximately five years and criticized Lukan's job performance for failing to inform the superintendent of the district's financial situation and failing to conduct audits of the reconciliations. In October, 1996, in response to Lukan's whistleblowing, the TEA sent auditors to the district to investigate the finances. The TEA auditors cited numerous problems with the district's finances and accounting. In March 1997, as a result of the TEA investigation, Scott and Brisco were suspended by the NFISD Board of Trustees, and in April, Scott was terminated. Scott and Brisco were later reinstated when the composition of the board changed as a result of a new board election.

In April, 1997, the TEA again visited the district to evaluate the 1997 fiscal year (September, 1996 - August, 1997) budget. In this evaluation, the TEA recommended external consultants to improve the financial state of the district, and further, stated that the district needed to reorganize the business office. The external consultants also were critical of Lukan's job performance. In June, 1997, upon TEA's recommendation, the district reorganized the business office, creating three new positions, a chief financial officer, an internal auditor, and a director of fixed assets. Lukan applied and interviewed for the chief financial officer position with five other candidates. After evaluating and ranking each of the candidates on a numerical system, Lukan was not selected by a four-member interviewing committee for the chief financial officer position. Because the chief financial officer position encompassed Lukan's old job, the director of financial

3

services, Lukan was reassigned to a position with the same pay as the director of fixed assets position.  Lukan also applied for the internal auditor position.  The committee again recommended another applicant.

In September, 1997, Lukan filed suit under 42 U.S.C. § 1983 asserting a violation of his First Amendment rights, and further, asserting violations of the Texas Whisteblower Act.  *See* Tex. Gov't Code Ann. § 554.002 (Vernon Supp. 1999).  Defendants filed motions for summary judgment on the basis of qualified immunity. The district court denied defendants' motions.

## II.  DISCUSSION

### A.  Appellate Jurisdiction

Before reaching the merits, we must determine whether we have appellate jurisdiction in this interlocutory appeal.  The district court denied Appellants' motion for summary judgment on the ground that "several material fact issues" existed.  We conclude that the district court's denial of summary judgment on the basis of qualified immunity was based on a conclusion of law and that we possess jurisdiction to hear this appeal.

"District court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, notwithstanding their interlocutory character, when based on a conclusion of law." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).  An order is purely legal where it concerns only the application of established legal principles to a given set of facts. *See Johnson v. Jones,* 515 U.S. 504, 513-14 (1995).  The existence of disputed issues of material fact does not necessarily preclude review of the case. *See Wren v.*

4

*Towe*, 130 F.3d 1154, 1157 (5th Cir. 1997). A petitioner may "claim on appeal that all of the conduct which the District Court deemed sufficiently supported for the purposes of summary judgment met the *Harlow* standard of 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). *See also Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

Appellants claim that they are entitled to qualified immunity as a matter of law because the facts at issue do not constitute a clearly established violation of federal law or, in the alternative, that their actions were objectively reasonable. As we are addressing conclusions of law, we may exercise appellate jurisdiction over this interlocutory appeal.

B.   Standard of Review

This Court reviews the district court's denial of a motion for summary judgment based on qualified immunity *de novo. See Benningfield v. City of Houston*, 157 F.3d 369, 374 (5th Cir. 1998). Summary judgment shall be entered in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" where a reasonable party could return a verdict for the nonmoving party. *See Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 597 (1986).

C.   Qualified Immunity

The sole issue on interlocutory appeal is whether Appellants were entitled to qualified immunity from Lukan's § 1983 claim for

5

the alleged violation of his First Amendment rights. In determining whether a public official is entitled to qualified immunity under § 1983, we apply a two-step analysis. First, if the official's conduct did not violate a clearly established constitutional right, the official is entitled to qualified immunity. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998). Second, even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *See id.*

A First Amendment retaliation claim must include facts showing that: (1) the employee suffered an adverse employment decision; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concern outweighs the defendants' interest in promoting efficiency; and (4) the employee's speech must have motivated the defendants' action. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). If the plaintiff carries this burden, then the defendant must show, by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977); *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1423 (5th Cir. 1997).

At the outset, we note that Lukan has abandoned his First Amendment retaliation claim against Brisco. Lukan has not presented any evidence that Brisco retaliated or conspired against Lukan. With respect to Scott, the parties do not dispute that Lukan suffered an adverse employment decision, the speech involved was a matter of public concern, and the matters of public concern

6

outweighed interests in efficiency.  Thus, we consider only whether Lukan's speech motivated Scott's actions.

Lukan's evidence fails to establish a causal connection between the speech and the adverse employment actions that he alleges.  Lukan presented evidence of retaliation by Scott, asserting that Scott removed tax and purchasing responsibilities from his control and that she also recommended not renewing Lukan's employment contract.  Lukan also suggested that Scott had a motive to retaliate against Lukan because his speech led to Scott's temporary suspension and termination.  Further, Lukan contends that as the head of the hiring committee, Scott had the opportunity to make negative comments and direct the interviewing committee to select candidates other than Lukan for the chief financial officer and internal auditor positions.

Our review of the record, however, shows that the interviewing committee responsible for selecting the job candidates did not retaliate against Lukan.  The interviewing committee members testified in affidavits that they did not have any knowledge of Lukan's whistleblowing activities against Scott.  Lukan has not alleged, nor can we find, any evidence that the committee's process was tainted or harbored any illegal motives.  The interviewing committee ranked Lukan and other candidates for the chief financial officer and internal auditor positions on a numerical-based system using a series of identical questions posed to each candidate.  The committee recommended the highest scoring candidates for the chief financial officer and internal auditor positions to the NFISD board.  The NFISD, in turn, hired the recommended candidates. Lukan has failed to establish a causal connection between his speech and the alleged retaliatory conduct.

Moreover, our review of the record shows that even if Lukan

7

established that his speech motivated their conduct, the defendants would have taken the same action.  The district was suffering from severe financial problems prior to and during Scott's tenure as the superintendent.  Multiple audits of the business office showed ongoing performance problems such as failures to conduct bank reconciliations, unrecorded checks and deposits, and large budget deficits.  The September, 1996, special audit report was critical of the business office staff and the failures to reconcile the bank accounts.  The October, 1996, TEA evaluation highlighted a number of financial and accounting problems in the district, and further, recommended external auditors and reorganization of the business office.  The external auditors found the district's financial records "the worse they had ever seen."  In light of Lukan's job performance and the critical state of the district's finances, the Appellants would have taken the same action in the absence of Lukan's protected conduct.  Thus, Appellants did not violate Lukan's constitutional rights and were entitled to qualified immunity.

### III.  CONCLUSION

Based on the foregoing reasons, the district court's denial of summary judgment for Appellants is REVERSED.