**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 00-51135**

---

**LAURA A. MARTINEZ,**

**Plaintiff-Appellee,**

**versus**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE; ADONAY DAVILA, in his
official and individual capacity; EDUARDO CARMONA, in his
official and individual capacity; RAYMOND VILLARREAL, Warden,**

**Defendants-Appellants.**

---

**Appeals from the United States District Court
for the Western District of Texas**

---

July 25, 2002

Before BARKSDALE and STEWART, Circuit Judges, and DUPLANTIER,

District Judge.[1]

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this interlocutory appeal concerning Eleventh Amendment
and qualified immunity, the issues at hand are:  whether Texas
waived Eleventh Amendment immunity in federal court either by
removing this action to federal court or by waiving sovereign
immunity in state court under the Texas Whistleblower Act, TEX.
GOV'T CODE ANN. § 554; and whether Laura Martinez has shown violation
of a clearly established constitutional right, thereby depriving
the three individual Defendants of qualified immunity.  Defendants
Texas Department of Criminal Justice (TDCJ), Major Adonay Davila,

---

[1]   United States District Judge of the Eastern District of
Louisiana, sitting by designation.

Assistant Warden Raymond Villarreal, and Warden Eduardo Carmona appeal the denial of summary judgment, asserting the district court erred: in denying Eleventh Amendment immunity against Martinez's Texas Whistleblower Act claims; and in denying qualified immunity to the individual defendants. **REVERSED and REMANDED.**

I.

Martinez served as a corrections officer at the Dolph Briscoe Unit of the TDCJ. She alleges that, on 1 October 1998, she witnessed a major use-of-force incident. That alleged incident is the springboard for this action, which concerns her termination, arising out of charges made against her within a month of the incident and allegedly in retaliation for reporting it. The bridging event between the incident and her termination was her contact with an inmate a few weeks after the incident. In either her affidavit in opposition to summary judgment or her deposition, she states the following.

Three officers, who were not assigned to the building where she was working, demanded access in order to inventory a utility closet. Once inside the building, one officer ordered Martinez to open inmate Joey Parks' cell; she did so, although she thought it a strange request. The three officers took Parks into the utility closet. Less than 15 minutes later, one officer emerged from the closet and signaled to Martinez that there was a security problem.

When additional officers arrived, Parks was brought out of the utility closet and appeared to be "ruffled up" and "red in the face". Martinez believes Parks was assaulted by the officers;

2

however, she never observed use of force. (The officers involved in the incident are *not* defendants in this action.)

In accordance with standard procedures, Martinez drafted a witness statement, documenting the incident. She was asked to rewrite her statement several times by Lieutenant Lopez (*not* a defendant). These revisions involved shortening the statement and deleting details, such as the names of officers uninvolved in the incident, references to certain procedures, and a description of Parks' appearance after being removed from the closet. While she was revising her statement, Officer Jiminez (*not* a defendant) told her the revisions were required because her statement was "not matching with the other three officers' statements". These drafts, and subsequent ones, were destroyed.[2]

Approximately two weeks later, the major use-of-force clerk, Ms. Zuniga (*not* a defendant), reviewed Martinez's statement and requested additional revisions; Martinez complied. Approximately one week later, Assistant Warden Villarreal (*a defendant*) called Martinez into his office, informed her that her statement did not match those of the other officers, and asked her to record the incident in another inter-office communication (memo). The Assistant Warden called Warden Carmona (*a defendant*) to the office; they asked Martinez about "cliques" formed by other officers and

---

[2]    When deposed, Martinez stated she tore up each draft as she wrote a subsequent one; however, at other times, she stated that "they" disposed of the drafts, without identifying to whom she was referring.

3

whether she "knew what it meant to put an inmate in 'check'".[3]
Martinez prepared the memo. When she delivered the memo to
Assistant Warden Villarreal the next day, 22 October 1998, he
seemed displeased, was rude to her, and asked why the memo was
longer than her witness statement.

That evening, Martinez was assigned by Major Davila (*a
defendant*) to the craft shop, which closed at 9:30 p.m. Just
before 9:30, after the inmates left, Martinez turned off the lights
and did a final security check, using her flashlight. Inmate
Guardiola suddenly appeared by the craft shop exit and stated he
was there to ask about being disciplined for failing to tuck in his
shirt and for not being respectful to Martinez. Martinez was very
frightened because: Guardiola was out of place and did not have
craft shop privileges; and, earlier that day, the officers in her
unit were told that a female officer in another unit had been
assaulted and raped when confronted by an inmate in an empty room.
Martinez told Guardiola to step back and motioned with her hands
for him to do so.

A subsequent affidavit, supporting a warrant for Martinez's
arrest (the arrest is discussed *infra*), presents a different
version of the craft shop incident: Guardiola and Martinez were
involved in a relationship that included "written notes, the

---

[3]     At one point in her deposition, Martinez said this discussion
with Warden Carmona occurred on 21 October 1998; at another point,
on 22 October. And, she states in her affidavit that it occurred
on 22 October. Based on our review of the record, we assume the
discussion occurred on 21 October. In any event, the exact timing
is not a material issue. *See, e.g., **Colston v. Barnhart***, 146 F.3d
282, 284 (5th Cir.) (en banc), *cert. denied*, 525 U.S. 1054 (1998).

4

promise of gifts, and the introduction of contraband into the facility"; Martinez informed Guardiola she would be working in the craft shop; Guardiola responded he would meet her there at 9:30 p.m.; he entered the craft shop by opening a security door with a comb; Martinez turned out the lights; and they had sexual intercourse. That affidavit states further: Major Davila observed Martinez and Guardiola alone together in the dark craft shop; saw Martinez place her arms around Guardiola; saw Guardiola remove his shirt and place it on a table; "witnessed the two making motions with their bodies in contact"; entered the craft shop; and saw Guardiola tucking in his shirt.

According to Martinez: when Major Davila entered the shop, he asked what was going on; she responded that Guardiola wanted to talk about the disciplinary action she was bringing against him for failing to tuck in his shirt earlier in the day; Major Davila had Guardiola taken to administrative segregation; Martinez accompanied Major Davila to the office of Assistant Warden Villarreal; there, Martinez repeated her version of the events; Major Davila informed her she would be charged with reckless endangerment for being alone with an inmate; and, Assistant Warden Villarreal advised her she would be charged with both criminal mischief and reckless endangerment unless she resigned, but she refused because she had done nothing wrong.

The next day, 23 October 1998, Assistant Warden Villarreal reported the incident to the TDCJ Internal Affairs Division. Internal Affairs Officer Melton interviewed Major Davila. Next,

5

Officer Melton and Internal Affairs Officer Mann interviewed Martinez in Assistant Warden Villarreal's office.  According to Martinez:  they questioned her; accused her of performing oral sex on Guardiola; urged her to confess and resign; became angry when she refused; and ordered her to go to Warden Carmona's office, where she was strip-searched and her purse was searched.

In accordance with her normal work schedule, Martinez reported for work on 26 October and testified at Guardiola's disciplinary hearing regarding his being out of place in the craft shop on 22 October.  On 27 October, the day after the hearing, Guardiola was interviewed by Internal Affairs Officer Melton; Guardiola provided his version of the incident and of his relationship with Martinez.

The next day, 28 October, Martinez was called into Assistant Warden Villarreal's office, arrested, strip-searched, handcuffed, and taken to a county jail by TDCJ Internal Affairs Officers. Martinez was charged with "Violation of Civil Rights of Person in Custody: Improper Sexual Activity with Person in Custody: Texas Penal Code: Sec. 39.04:  State Jail Felony".[4]

Following an administrative hearing on 11 November 1998 (approximately two weeks after Martinez's arrest), Warden Carmona recommended Martinez's dismissal, based on finding her "guilty" with respect to the offense of "cohabitation with an offender". Pursuant to TDCJ Guidelines, a cohabitation finding mandates dismissal.  *See* Guidelines for Employee Disciplinary Actions, PD-

---

[4]    Martinez was indicted for intentional sexual intercourse with an inmate.  Subsequent to her termination, she was acquitted by a jury.

22, Attachment A (Texas Department of Criminal Justice 1 May 1998). In accordance with standard procedures, Warden Carmona's recommendation was individually reviewed by a TDCJ Regional/Sectional Director, the TDCJ Director of Human Resources and Staff Development, a TDCJ Legal Affairs representative, and the TDCJ Deputy Director. On 10 January 1999, the TDCJ Director gave final approval for Martinez's dismissal. (*TDCJ is a defendant, but none of the individuals involved in reviewing Warden Carmona's recommendation are defendants.*)

Martinez sued TDCJ in state court, claiming violations of the Texas Whistleblower Act and the First Amendment. After TDCJ removed the action to federal court, Martinez added as defendants Major Davila, Assistant Warden Villarreal, and Warden Carmona. Defendants moved for summary judgment, claiming: Eleventh Amendment immunity for TDCJ and for the individual Defendants, in their official capacity; and qualified immunity for the individual Defendants, in their individual capacity.

The district court held: TDCJ and the individuals, in their official capacity, were entitled to Eleventh Amendment immunity against Martinez's First Amendment retaliation claim; because of the Texas Whistleblower Act's waiver of sovereign immunity in state court, the Eleventh Amendment did not bar Martinez's Whistleblower Act claims in federal court; and the individuals, in their individual capacity, were not entitled to summary-judgment-qualified-immunity against Martinez's First Amendment claim.

II.

7

For this interlocutory appeal, TDCJ and the three individual Defendants contest the denial of summary judgment on the Whistleblower Act claim. Likewise, the individuals, in their individual capacity, contest the denial of qualified immunity on the First Amendment claim. (As noted, for that claim, summary judgment was awarded TDCJ and the individual Defendants, in their official capacity.)

A.

Regarding the district court's holding that the Texas Whistleblower Act, TEX. GOV'T CODE ANN. § 554, waives Texas' immunity in federal court, our jurisdiction arises under the collateral order doctrine. *See* **Sherwinski v. Peterson,** 98 F.3d 849, 851 (5th Cir. 1996) (holding States and State entities may appeal an order denying Eleventh Amendment immunity). The denial of Eleventh Amendment immunity is reviewed "*de novo*, as a question of law, like other questions of subject matter jurisdiction". **Anderson v. Red River Waterway Comm'n,** 231 F.3d 211, 214 (5th Cir. 2000).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against her own state, including a state agency. *See, e.g.,* **Hughes v. Savell,** 902 F.2d 376, 377 (5th Cir. 1990) (*citing* **Pennhurst State Sch. & Hosp. v. Halderman,** 465 U.S. 89, 100 (1984)). This includes, as here, a supplemental state law claim seeking money damages. **Lapides v. Bd. of Regents of the Univ. System of Ga.**, 122 S. Ct. 1640, 1643 (2002); **Kitchens v. Tex. Dep't of Human Res.,** 747 F.2d 985, 986 (5th Cir. 1984) (*citing* **Pennhurst**, 465 U.S. at 121).

8

Martinez maintains TDCJ waived Eleventh Amendment immunity in two respects:  by removal of the action from state, to federal, court; and under the Texas Whistleblower Act.

1.

In district court, TDCJ asserted Eleventh Amendment immunity; and Martinez contested it.  But, in so doing, she never raised her current waiver-by-removal claim.  Normally, we will entertain legal issues raised for the first time on appeal *only* "in extraordinary instances ... to avoid a miscarriage of justice".  **Doleac v. Michalson**, 264 F.3d 470, 492 (5th Cir. 2001) (*quoting* **Bayou Liberty Ass'n, Inc. v. United States Army Corps of Eng'rs,** 217 F.3d 393, 398 (5th Cir. 2000)); *see also* **Stokes v. Emerson Elec. Co.,** 217 F.3d 353, 358 n.19 (5th Cir. 2000).

While this appeal was pending, however, the Supreme Court held in **Lapides**, 122 S. Ct. at 1640, that a State's removal to federal court waived Eleventh Amendment immunity.  We have reviewed for plain error issues raised for the first time on appeal in criminal cases when an intervening Supreme Court decision addressed the issue being raised.  *See, e.g.*, **United States v. Rios-Quintero**, 204 F.3d 214, 215-16 (5th Cir. 2000).  Our circuit, however, does not appear to have addressed this situation in the civil context.

Several circuits will consider waived or forfeited (collectively, "waived") issues when there is an intervening Supreme Court decision.  In **Holland v. Big River Minerals Corp.**, 181 F.3d 597, 605-06 (4th Cir. 1999), the Fourth Circuit noted an intervening change in the law, recognizing an issue not previously

9

available, can be an exception to the rule that the failure to timely raise an issue in district court waives that issue on appeal. This exception only "applies [, however,] when 'there was strong precedent' prior to the change, ... such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner". *Id.* (*quoting Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 143 (1967) (plurality opinion)). In applying the exception, the Fourth Circuit concluded an intervening Supreme Court opinion was not a sufficient change in the law and no strong precedent prevented the party from earlier raising the issue. *Id.* at 606.

The supervening decision doctrine of the District of Columbia Circuit allows consideration of waived issues when the "supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless" prior to the intervening decision. *United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir. 1994); *see also Brown v. M & M/Mars*, 883 F.2d 505, 512-13 (7th Cir. 1989).

The Federal Circuit follows a similar approach when there is an intervening decision. *See Forshey v. Principi*, 284 F.3d 1335, 1355-58 (Fed. Cir. 2002) (en banc) (allowing consideration of waived legal issues in appeals from the Court of Appeals for Veteran Claims when: retroactive legislation is passed; there is an intervening Supreme Court or Federal Circuit decision; the

correct law or standard of review is not argued by either party; or a *pro se* litigant appeals).

The Tenth Circuit utilizes a much more lenient approach. When there is an intervening change in the law, appellate review of waived legal issues is allowed, *particularly* when the issues "are questions of law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice". **Petrini v. Howard**, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (per curiam); *see also* **Gray v. Phillips Petroleum Co.**, 971 F.2d 591, 593 n.3 (10th Cir. 1992) (noting an attorney's fee issue was brought to the district court's attention even though the issue of law asserted on appeal was not and applying an intervening Supreme Court decision foreclosing attorney's fees).

The Eleventh Circuit, however, has concluded that even a remand by the Supreme Court for reconsideration in the light of an intervening Court decision does not require the court to address waived arguments. *See* **United States v. Ardley**, 273 F.3d 991 (11th Cir. 2001). The denial of rehearing en banc in **Ardley** stated: although an intervening decision would apply to cases on direct appeal under the retroactivity doctrine, the procedural bar doctrine (failure to raise the issue in the opening brief) is not trumped by the retroactivity doctrine, *id.* at 992; and if Supreme Court decisions applied without regard for procedural default rules, then no procedural bar would ever be enforced. *Id.*

11

With these approaches to guide our decision, we see no sound reason to depart now from our long established course of refusing, absent extraordinary circumstances, to entertain legal issues raised for the first time on appeal. *See* **Doleac**, 264 F.3d at 492. Even if we were to adopt some form of the intervening decision doctrine, it would not excuse Martinez' procedural default. (Again, she failed to raise her waiver-by-removal claim in district court, raising it for the first time (as Appellee) in her response brief to this court.) The law (this issue) was not so settled prior to **Lapides** that raising her waiver-by-removal claim in district court would have been pointless or futile. *See, e.g.,* **Wisconsin Dep't of Corrections v. Schacht**, 524 U.S. 381, 393-98 (1998) (Kennedy, J., concurring); **Gunter v. Atlantic Coast Line R. Co.**, 200 U.S. 273, 284 (1906). Accordingly, we will not consider her newly raised waiver-by-removal claim.

2.

As she did in district court, Martinez maintains that the Texas Whistleblower Act's waiver of state sovereign immunity in Texas state court operates to waive Eleventh Amendment immunity in federal court. Even when a State consents to suit in its own courts, however, it may retain Eleventh Amendment immunity from suit in federal court. *See, e.g.,* **Welch v. Dep't of Highways & Pub. Transp.,** 483 U.S. 468, 473-74 (1987); **Fla. Dep't of Health and Rehabilitative Servs. v. Fla. Nursing Home Ass'n,** 450 U.S. 147, 150 (1981); **Magnolia Venture Capital Corp. v. Prudential Sec., Inc.,** 151 F.3d 439, 443 (5th Cir. 1998), *cert. denied*, 525 U.S. 1178

12

(1999); *Sherwinski*, 98 F.3d at 851-52. A State's consent to being sued in federal court must "be unequivocally expressed". *Pennhurst,* 465 U.S. at 99; *see also Lapides*, 122 S. Ct. at 1644 ("a 'clear' indication of the State's intent to waive its immunity" required); Port *Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 305 (1990) (waiver must be "stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction" (internal quotation marks omitted; quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985))). Further, for a state statute to waive Eleventh Amendment immunity, "it must specify the State's intent to subject itself to suit in *federal court*". *Feeney,* 495 U.S. at 306 (quoting *Atascadero*, 473 U.S. at 241; emphasis in original; internal quotation marks omitted); *see also Lapides*, 122 S. Ct. 1643-44.

The relevant provisions of the Texas Whistleblower Act are for the sovereign immunity waiver, § 554.0035, and venue, § 554.007. The waiver provision states:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. *Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under the chapter for violation of this chapter*.

TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp. 2001)(emphasis added). Linked with this waiver is the Act's specifying that a public employee may sue "in a district court of the county in which the

13

cause of action arises or in a district court of Travis County".
TEX. GOV'T CODE ANN. § 554.007 (Vernon Supp. 2001).

Neither section evidences any intent by Texas to waive its Eleventh Amendment immunity and subject itself to suit in federal courts. In other words, the Act waives state sovereign immunity only in Texas state courts. This is the only reasonable construction of the Act. We discern no unequivocal expression or overwhelming implication leaving "no room for any other reasonable construction" in the Texas Whistleblower Act, *see **Feeney,*** 495 U.S. at 305.

Therefore, we hold that, under this Act, Texas has not waived its Eleventh Amendment immunity in federal court. As a result, Martinez cannot pursue her Texas Whistleblower Act claim against Defendants.

B.

The remaining issue concerns the First Amendment retaliation claim, against Warden Carmona, Assistant Warden Villarreal and Major Davilla, in their individual capacity. (Again, for that claim, summary judgment was awarded TDCJ and the three individual Defendants, in their official capacity.)

At issue is the denial of summary judgment for qualified immunity. "A denial of [summary judgment based on] qualified immunity is immediately appealable under the collateral order doctrine, when based on an issue of law." ***Rodriguez v. Neeley***, 169 F.3d 220, 222 (5th Cir. 1999). For qualified immunity *vel non*, our review is *de novo*. *See **Lukan v. N. Forest ISD***, 183 F.3d 342, 345

14

(5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000). For a qualified immunity appeal, however, our review of any factual disputes is limited to their materiality, not their genuineness. *See, e.g.*, **Bazan ex rel. Bazan v. Hidalgo County,** 246 F.3d 481, 490-91 (5th Cir. 2001); **Colston v. Barnhart**, 146 F.3d 282, 284 (5th Cir.)(en banc), *cert. denied*, 525 U.S. 1054 (1998). Because the district court did not identify which factual issues it considered genuine, one option is to analyze the record to determine those issues of fact the court likely considered genuine. *Cf.* **Bazan,** 246 F.3d at 491 (5th Cir. 2001), *with* **Wagner v. Bay City, Tex.,** 227 F.3d 316, 320 (5th Cir. 2000). This ensures that an interlocutory appeal on qualified immunity *vel non* is not defeated because the district court failed to articulate its reasons for denying summary judgment. For this record, however, we will assume Martinez's version of the facts is true in order to review the qualified immunity issue.

To determine whether a government official is entitled to qualified immunity, we apply a well-established, two-step analysis: whether the official violated a clearly established constitutional right; and, if he did, whether his conduct was objectively reasonable. *See, e.g., **Lukan***, 183 F.3d at 345-46. A prerequisite to the qualified immunity analysis, then, is that Martinez must show the violation of a clearly established right; she must allege and show facts to support every element of a First Amendment retaliation claim.

15

A First Amendment retaliation claim requires showing: the employee suffered an adverse employment action; her speech involved a matter of public concern; her interest in commenting on such matters outweighs the defendant's interest in promoting efficiency; and the speech motivated the adverse employment action. *Id.* at 346. If the plaintiff makes this showing, the defendant must prove by a preponderance of the evidence that, regardless of the protected conduct, it would have taken the same action against the plaintiff. *Id.*

We assume *arguendo* that: Martinez suffered an adverse employment action (because she was terminated by TDCJ), *see, e.g.,* **Breaux v. City of Garland, Tex.,** 205 F.3d 150, 157 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000); her speech implicates a matter of public concern (because it involved misconduct by corrections officers), *see, e.g.,* **Thompson v. City of Starkville, Miss.,** 901 F.2d 456, 461-67 (5th Cir. 1990) (involving police misconduct); and her speech motivated the decision to terminate her.

Nevertheless, the individual Defendants have shown that, regardless of the protected conduct, TDCJ would have terminated Martinez. *See* **Beattie v. Madison County Sch. Dist.,** 254 F.3d 595, 603-04 (5th Cir. 2001); **Lukan**, 183 F.3d at 346; *see also,* **Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,** 429 U.S. 274, 287 (1977).

There is no evidence (and Martinez does not allege) that inmate Guardiola's report to Assistant Warden Villarreal and TDCJ Internal Affairs about the alleged sexual relationship between

16

Guardiola and Martinez was requested or encouraged by the individual Defendants. As noted, a violation involving cohabitation with an inmate required Warden Carmona to recommend dismissal; Martinez admits this. Only the TDCJ Executive Director, Deputy Executive Director, or Division Director could impose discipline less than dismissal. *See* Guidelines for Employee Disciplinary Actions, PD-22, Attachment A (Texas Department of Criminal Justice 1 May 1998). Furthermore, the Internal Affairs Officer concluded, after her independent investigation, that Martinez had sexual intercourse with inmate Guardiola; and both a neutral magistrate and a grand jury agreed that there was sufficient evidence to arrest and indict Martinez on the charge of improper sexual activity with a person in custody. Consequently, TDCJ had sufficient evidence to terminate Martinez; it terminated her because of the cohabitation allegations, not because of her alleged protected speech.

Therefore, because her claim for First Amendment retaliation fails, Martinez has failed to show violation of a clearly established constitutional right. Accordingly, the three individual Defendants, in their individual capacity, are entitled to qualified immunity.

## III.

For the foregoing reasons, the denials of summary judgment for all Defendants on the Texas Whistleblower Act claim and for the three individual Defendants, in their individual capacity, on the First Amendment retaliation claim are **REVERSED**; and this case is

17

**REMANDED** to district court for entry of judgment in favor of Defendants.

                                        *REVERSED and REMANDED*