# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

No. 06-50568

LACRESHA MURRAY; R L MURRAY, Individually and as next friend of Cleo
Murray, Jason Murray, Tyler Murray, and Trent Murray; SHIRLEY MURRAY,
Individually and as next friend of Cleo Murray, Jason Murray, Tyler Murray,
and Trent Murray; SHANTAY MURRAY, Individually

                              Plaintiffs-Appellees-Appellants

v.

RONNIE EARLE, Etc; ET AL

                              Defendants

DAYNA BLAZEY, Individually and as an Assistant District Attorney of Travis
County, Texas

                              Defendant-Appellee

STEPHANIE EMMONS, Individually and as an Assistant District Attorney of
Travis County, Texas; ANGELA MCGOWN, Individually and as Supervisor of
the Travis County Child Protective Services; HECTOR REVELES, Individually
and as a Detective of the Austin Police Department; ERNEST PEDRAZA,
Individually and as a Detective of the Austin Police Department; ALBERT
EELLS, Individually and as a Detective of the Austin Police Department

                              Defendants-Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:02-CV-552

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

For this interlocutory appeal, primarily at issue is whether LaCresha Murray has alleged a violation of a clearly-established constitutional right, depriving five Defendants of qualified immunity. Stephanie Emmons, Angela McGown, Hector Reveles, Ernest Pedraza, and Albert Eells (Defendants-Appellants) appeal the denial of summary judgment on their assertions of qualified immunity regarding Murray's Fourteenth Amendment claim and official immunity, inter alia, for the related state-law civil-conspiracy claim. Alternatively, Emmons appeals the district court's jurisdiction to reinstate sua sponte the earlier-dismissed Fourteenth Amendment claim. On cross-appeal, Murray challenges the summary judgment awarded Dayna Blazey. VACATED and RENDERED in part; DISMISSED in part; REMANDED.

I.

Previously, this action was here on an interlocutory appeal regarding the qualified-immunity denial for Murray's Fifth-Amendment claim. Murray v. Earle, 405 F.3d 278, 283-84 (5th Cir. 2005) (Murray I). The facts pertinent to this action are stated in that prior opinion:

> This case arises out of the investigation of plaintiff-appellee LaCresha Murray's . . . involvement in the death of Jayla Belton, age two, in 1996. At the time of these events, LaCresha was eleven years old. She and her siblings lived with her grandparents, R.L. and Shirley Murray, who were her adoptive parents, as well. The Murrays also provided daycare in their home for several other children.
> Late in May of 1996, Jayla, who was routinely cared for by the Murrays, was dropped off at the Murray home by her mother's boyfriend. During the course of the day, Jayla appeared to be ill.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

After she vomited at the lunch table, LaCresha's older sister, Shantay, gave Jayla some medication and put her to bed. No one checked on Jayla until later that day. R.L. Murray testified that, late in the afternoon, LaCresha came in from outside and went to the back of the house, near the bedroom where Jayla was sleeping. R.L. then heard "thumping noises," but he assumed that LaCresha was playing with a ball and told her to stop. Shortly after that, LaCresha told R.L. that Jayla was throwing up and shaking. He asked her to bring Jayla to the front of the house, where he observed that Jayla appeared ill. He told LaCresha to take Jayla outside to warm her up.

At 5:00 p.m., another parent arrived to collect her children and noticed that Jayla was sweating profusely. That parent urged R.L. to call 911, but he declined to do so. R.L. took Jayla to the hospital, however; she was pronounced dead at approximately 5:30 p.m.

An autopsy conducted the following day revealed that Jayla had suffered a severe liver injury caused by a blunt blow to the abdomen. This trauma had broken four of her ribs and split her liver into two pieces. The medical examiner concluded that Jayla had died within five to fifteen minutes after receiving the injury and also noted some thirty other bruises to her head, ear, forehead, back, shoulder, elbow, chest, and the left side of her torso. The examiner ruled Jayla's death a homicide.

That same day, law-enforcement authorities removed all the children from the Murray home. They placed LaCresha and one of her sisters in Texas Baptist Children's Home, a private shelter for children which contracts with the State to provide foster care. At the time that these children were removed from their adoptive parents' home, the authorities believed that they were in danger. There is some dispute as to exactly when the police first began to suspect that LaCresha had killed Jayla, but the focus of the investigation had quickly shifted to LaCresha after law-enforcement authorities spoke with other members of the household.

Three days after LaCresha had been removed from her adoptive parents' home, Detective Reveles directed Detectives Pedraza and Eells, along with Angela McGown, the supervisor of the Travis County Child Protective Services, to interview LaCresha. It is undisputed that, by this time, the police no longer feared for LaCresha's safety but instead considered her a suspect in Jayla's death.

Before the interview of LaCresha, Detectives Reveles and Pedraza consulted with assistant district attorney Emmons on the proper method of interrogating LaCresha. Emmons testified that, even though LaCresha had been at the Texas Baptist Children's Home for three days, none of the officials believed that she was in the custody of the State. In their minds, this obviated the need for them to take her before a magistrate, as required by Texas law for children who are in state custody. Pedraza and Eells gave LaCresha a Miranda warning before beginning to interrogate her, but they did not take her before a magistrate or notify her parents or attorney.

The detectives questioned LaCresha at the Baptist Children's Home for approximately two hours, eventually eliciting a confession that she had dropped Jayla and kicked her. The State then charged her with capital murder and injury to a child; the juvenile court ruled her confession admissible; and the jury convicted her of negligent homicide and injury to a child. Extensive publicity followed, presumably influencing the juvenile court to order a new trial on its own motion. At the second trial, the State charged LaCresha with injury to a child; her confession was again admitted; and the second jury convicted her. The juvenile court adjudicated LaCresha delinquent and sentenced her to twenty-five years in the custody of the Texas Youth Commission.

Three years later, the Texas Court of Appeals reversed LaCresha's conviction. The appellate court ruled that LaCresha had been in the custody of the State, that law-enforcement authorities had violated Texas law by not taking her before a magistrate prior to interrogating her, and that her confession was therefore inadmissible.

Murray I, 405 F.3d at 283-84 (footnotes omitted).

Pursuant to 42 U.S.C. § 1983, Murray filed this action in 2002 for damages against numerous individuals for violations of her constitutional rights under the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments, and for state-law violations. On motions for summary judgment, the district court dismissed all claims, except those against Blazey and Defendants-Appellants for violations of Murray's Fifth Amendment right against self-incrimination and for related state-law civil conspiracy.

As noted supra, an interlocutory appeal was pursued from the immunity-denial for those two remaining claims. This court vacated the qualified-immunity denial for the Fifth Amendment claim, holding, pursuant to the qualified-immunity analysis discussed infra, that the law was not yet clearly established that pre-trial interrogation of a suspect could expose an official to liability for violation of the suspect's Fifth Amendment rights. Murray I, 405 F.3d at 293. Our court also held Defendants-Appellants had official immunity against the related state-law civil-conspiracy claim. Id. at 294-95.

On remand, the district court entered judgment for Defendants-Appellants on, inter alia, the Fifth Amendment claim; but, on the other hand, it reinstated sua sponte the previously-dismissed Fourteenth Amendment substantive-due-process and related state-law civil-conspiracy claims. Defendants-Appellants requested summary judgment on those claims, asserting: for the federal-law claim, qualified immunity; and, for the state-law claim, official immunity and immunity under the Texas Tort Claims Act. The district court granted summary judgment to Blazey on those claims, but denied it for Defendants-Appellants.

II.

For this interlocutory appeal, only Emmons challenges the district court's jurisdiction to reinstate sua sponte the earlier-dismissed Fourteenth Amendment, and related state-law, claims. Defendants-Appellants contest the denials of qualified immunity on that constitutional claim and of state-law immunity for the related civil-conspiracy claim. Murray cross-appeals, contesting the qualified-immunity judgment for Blazey.

A.

Emmons maintains Murray I precluded the district court's sua sponte reinstatement, on remand, of the Fourteenth Amendment claim. That decision, however, concerned only the qualified-immunity denial for the Fifth Amendment claim. Murray I, 405 F.3d at 285.

5

Needless to say, the Murray I interlocutory review extended only to the district court's immunity-denial for the Fifth Amendment and related state-law claims. E.g., Gobert v. Caldwell, 463 F.3d 339, 344 (5th Cir. 2006) ("Under the collateral order doctrine . . . a district court's 'order denying qualified immunity, to the extent that it turns on an 'issue of law' is immediately appealable'". (quoting Behrens v. Pelletier, 516 U.S. 299, 306, 311 (1996))); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our court, therefore, was without jurisdiction to review, inter alia, the district court's Rule 12(c) (judgment on the pleadings) dismissal of the Fourteenth Amendment claim. On remand, the reinstatement of the Fourteenth Amendment, and related state-law, claims was within the district court's jurisdiction.

B.

As noted, the "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment". Mitchell, 472 U.S. at 530; see also Collins v. Ainsworth, 382 F.3d 529, 536 (5th Cir. 2004) ("This Court has interlocutory jurisdiction to determine the legal question of whether Plaintiffs' summary judgment facts state a § 1983 claim under clearly established law."). Similarly, "orders denying official immunity under Texas law are immediately appealable to the same extent as denials of qualified immunity under federal law". Kinney v. Weaver, 367 F.3d 337, 346 n.7 (5th Cir. 2004) (en banc).

A summary judgment is reviewed de novo, applying the same standards as the district court. E.g., Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir.), cert denied 128 S. Ct. 181 (2007). Accordingly, such immunity-denial is reviewed de novo. E.g., Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005). The well-pleaded facts are accepted as true, viewing them in the light most favorable to the plaintiff. E.g. Atteberry v. Nocona Gen. Hosp., 430

F.3d 245, 252 (5th Cir. 2005). As noted, the scope of our review, however, for an immunity-denial is restricted to the district court's legal conclusions. Foley v. Univ. of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003) ("The district court's determination that fact issues are genuine is not appealable. However, [its] determination that fact issues are material, that is, that resolution of them might affect the outcome of the case under governing law, is appealable . . . .").

1.

In general, the qualified-immunity doctrine shields government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Wallace v. County of Comal, 400 F.3d 284, 289 (5th Cir. 2005). Qualified immunity is a defense required to be raised by the official, and should be addressed by a district court in the early stages of litigation. E.g., Siegert v. Gilley, 500 U.S. 226, 231 (1991).

Determining whether an official is entitled to qualified immunity can involve two steps. The first step concerns "whether [, under then existing law,] a plaintiff has successfully alleged facts showing the violation of a statutory or constitutional right by [government] officials". Rutland, 404 F.3d at 923; see also Saucier v. Katz, 533 U.S. 194, 200 (2001) (clarifying that "the first inquiry must be whether a constitutional right would have been violated on the facts alleged"); McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

If such a violation is alleged, the second step involves first determining whether that right was clearly established when the official acted. E.g., Martinez v. Tex. Dep't of Criminal Justice, 300 F.3d 567, 576 (5th Cir. 2002); see also Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000) (A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right". (citation and internal quotation marks omitted)). If it was then clearly established, next

examined is whether the official's conduct was objectively reasonable in the light of that law.  E.g., McClendon, 305 F.3d at 323.

"If [, under the first step,] no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries [, under the second step,] concerning qualified immunity."  Saucier, 533 U.S. at 201.  Because Murray fails to allege conduct establishing a violation of a constitutional right, we proceed no further than the first step.

Murray maintains she alleged a violation of a Fourteenth Amendment substantive-due-process right.  It is well settled:  "Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence".  McClendon, 305 F.3d at 325 (emphasis added); see County of Sacramento v. Lewis, 523 U.S. 833, 846-849 (1998) (holding mere negligence "is categorically beneath the threshold of constitutional due process").  Restated, a plaintiff must allege conduct which "shocks the conscience".  County of Sacramento, 523 U.S. at 846-47; see also McClendon, 305 F.3d at 325-26.  Therefore, to satisfy the first step for this court's qualified-immunity analysis, Murray must have alleged such conduct.  As shown below, she failed to do so.

Murray maintains Defendants-Appellants violated her Fourteenth Amendment substantive-due-process right by depriving her of "life, liberty, and property without due process of law and denied [her] the equal protection of the laws".  She alleges Defendants-Appellants violated her constitutional right by: not "advis[ing] her . . . she was a suspect in the murder of Jayla Belton"; and not properly advising her of her Miranda rights and protection afforded under the Texas Family Code.  Murray maintains Detective Pedraza ordered an illegal removal of all children from her grandparents' residence and improperly attempted to take a statement from her.  She alleges Assistant District Attorney

Emmons and Detectives Pedraza, Eells, and Reveles refused to inform the Texas Protective Services caseworker of her status as a suspect.

Regarding Defendants-Appellants' plan to interrogate her, Murray maintains McGown (Supervisor of the Travis County Child Protective Services) and the three Detectives conspired to question her without the indicia of custody, in order to avoid constitutional requirements, such as the right to counsel. She alleges: Defendants-Appellants discussed how to legally question an eleven-year-old; and Assistant District Attorney Emmons advised the Detectives how to avoid custodial interrogation. Regarding her interrogation, she alleges only: Detectives Pedraza and Eells attempted to "Mirandize" her prior to questioning; and the interrogation lasted two hours and 40 minutes.

Murray maintains the above-stated allegations give rise to a Fourteenth Amendment violation. Viewing the evidence in the light most favorable to her, see McClendon, 305 F.3d at 323, she fails to allege Defendants-Appellants engaged in conduct that shocks the conscience. Instead, she simply alleges Defendants-Appellants, while investigating the death of Jayla Belton, attempted to determine (and follow) the proper procedure for questioning an eleven-year-old. Murray has, at most, asserted negligence, which, as stated, does not give rise to a constitutional violation. See County of Sacramento, 523 U.S. at 846-49. Therefore, Defendants-Appellants are entitled to qualified immunity.

2.

Defendants-Appellants maintain they are entitled to official immunity for the related state-law civil-conspiracy claim. Alternatively, they claim qualified immunity pursuant to the Texas Tort Claims Act. Although Murray lists these state-law immunity claims in her brief's statement of issues, she fails to address either claim.

"Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously

perform their official duties." Telthorster v. Tennell, 92 S.W.3d 457, 460-61 (Tex. 2002) (citation omitted). "A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." Id. at 461 (citations omitted).

It is undisputed Defendants-Appellants were performing discretionary functions and acting within the scope of their authority. At issue, therefore, is whether they acted in good faith. Defendants-Appellants are entitled to official immunity from Murray's state-law claim if a reasonable prudent official, under the same or similar circumstances, could have believed their actions were correct. See City of Lancaster v. Chambers, 883 S.W.2d 650, 656 (Tex. 1994).

As discussed, Murray I held Defendants-Appellants officially immune from Murray's state-law claim that they conspired to deprive her of Fifth Amendment rights. 405 F.3d at 294-95. Our court ruled: "the officers did not conceal from the Texas trial court any of the circumstances surrounding [Murray]'s interrogation and, therefore, that they did not cause the violation of her rights". Id. at 295.

Our analysis for the Fourteenth Amendment, and related state-law, claims is identical. Murray shows no bad-faith conduct on the part of Defendants-Appellants. Indeed, they establish, as they did in Murray I, that all actions were performed in good faith. As stated supra, Defendants-Appellants attempted legally to question an eleven-year-old suspected of murder. Defendants-Appellants are, therefore, entitled to official immunity from the state-law civil-conspiracy claim. (Accordingly, we need not reach immunity vel non under the Texas Tort Claims Act.)

C.

Finally, Murray cross-appeals the qualified-immunity summary judgment for Blazey. As stated supra, only a qualified-immunity denial is immediately

appealable pursuant to the collateral-order doctrine. See Kinney, 367 F.3d at 346. Jurisdiction is lacking to review the summary judgment for Blazey because it is neither a final decision nor an appealable interlocutory order. See 28 U.S.C. §§ 1291, 1292. Restated, qualified-immunity grants can be reviewed only after final judgment. See Thompson v. Betts, 754 F.2d 1243, 1246 (5th Cir. 1985).

III.

For the foregoing reasons, the summary judgment denying federal and state-law immunity is VACATED and judgment is RENDERED for Defendants-Appellants Emmons, McGown, Reveles, Pedraza, and Eells; Murray's cross-appeal is DISMISSED for lack of jurisdiction; and this matter is REMANDED for further proceedings consistent with this opinion.